LUCY A. WARNER, as Administratrix and Respondent, *v.*
THE ERIE RAILWAY COMPANY, Appellant.

Where the master does his best to supply skillful and competent persons
to perform the service required, he is not liable for damages to an em-
ployee, resulting from the negligence of a co-employee engaged in the
same general employment.

A railroad corporation, having employed skillful and competent persons to
supervise and inspect its road-bed and bridges, and having made it their
duty to do so, is not liable for an injury to an employee, occasioned by
the falling of one of its bridges, where the defect was such as was not
apparent, and of which it had no notice.

The only ground of liability of the master to an employee, for injuries
resulting from the carelessness of a co-employee, which the law recog-
nizes, is that which arises from personal negligence, or from want of
proper care and prudence, in the management of his affairs, or in the
selection of its agents or appliances, etc.

THIS is an action to recover damages, arising from a per-
sonal injury, which resulted in the death of one of the
defendant's employees. The deceased was a baggageman,
and, when killed, was in the discharge of his duty, as such,
on a train of cars going from Hornellsville, east, on the
defendant's railroad. One of the defendant's bridges, over
the Conhocton river, fell as the train of cars was passing
over it. The jury found that the bridge fell from decay in
its timbers. The bridge was properly constructed, and was
originally of sufficient strength for the purposes for which it
was intended.

The court held, that there was only one question in the
case to be submitted to the jury, and that was, whether
the board of directors themselves, as representing the defend-
ant, and as distinguished from the employees, were guilty of
negligence in not discovering the fact that the bridge was in
an unsafe condition. That if the jury should be satisfied,
from the evidence, that the bridge was unsafe from decay,
and that occasioned its fall, and the board of directors were
guilty of negligence in not discovering the fact, that the
bridge had thus become unsafe, then the plaintiff would be

entitled to recover, and that that question alone must go to the jury.

The counsel for the defendant moved for a nonsuit, and insisted, that there was nothing showing any negligence on the part of the board of directors. The court decided the case must go to the jury on the question stated. The defendant's counsel excepted.

The defendant's counsel also moved for a nonsuit, at the close of the plaintiff's case, on two grounds:

1. That there was not any evidence tending to show that the injury arose from negligence on the part of the defendant.

2. That the complaint alleged, that, before the bridge fell, the defendant had notice it was unsafe and insecure; that there was not any evidence in the case tending to show any knowledge, on the part of the defendant, or notice to it, that the bridge was unsafe, or insecure; that such knowledge or notice was, in this case, necessary to entitle the plaintiff to recover.

The court refused to nonsuit the plaintiff, and the defendant's counsel excepted.

The defendant's counsel asked the court, among other things, to instruct the jury, that, in order to charge the defendant, it is necessary to show that the decay in the bridge, if it fell from decay, was known by some notice, or otherwise, to the president and directors.

The court refused to so instruct the jury, without qualification. The defendant's counsel excepted to this refusal.

The court, however, did instruct the jury, as last above requested, with the qualification and addition, "that, if the board of directors, by the exercise of that skill and prudence which is to be expected of persons occupying the same position, could, by the exercise of reasonable diligence and skill, have ascertained, or known, the defect in this bridge, the failure to ascertain, on their part, would make the defendant liable, because it is negligence, and substantially the same as if notice had been given the board."

The defendant's counsel excepted to this part of the charge given by way of qualification and addition.

The jury rendered a verdict against the defendant for $5,000. A motion was made for a new trial, on a case containing exceptions. The court denied the motion. An appeal was taken, from the order denying such motion, to the General Term. The order was affirmed, and a judgment was entered. From such judgment this appeal is taken.

*J. Ganson*, for the appellant.

*S. Rogers*, for the respondent.

BACON, J. In approaching the consideration of this case, which, in the precise aspect it assumes, may be deemed, in the courts of this State, a pioneer case, it is important to distinguish the principles which are to decide it from those which have been held in cognate cases, and especially to ascertain the precise ground on which the charge and rulings of the judge upon the trial proceded, and by which we are to assume the jury were guided in rendering their verdict.

In the first place, then, it is to be remarked, that the defendant in this action is not responsible, and is not to be made liable for injuries suffered by one of its employees, solely through the carelessness or negligence of another employee of the defendant, engaged in the same general business. The liability to injury from such a source is one which each employee takes upon himself when engaging with others in the service of a common master. It is a hazard incident to the nature of the engagement into which he enters, and in respect to which he becomes, so to speak, his own insurer.

In the second place, the cases which establish this general rule, maintain also the further qualification or extension of it, that the liability is not enlarged by the fact that an injured employee is of an inferior grade of employment to that of the party by whose carelessness the injury is inflicted and the damage caused, provided the services of each in his particular sphere and department are directed to the accomplishment of the same general end. These principles

have been often under discussion, and are settled by an array of authorities which it is hardly necessary to cite in detail. The following, among many others, may be deemed sufficient for the purpose: *Priestly* v. *Fowler* (3 Mees. & Wels. 1); *Coon* v. *Utica and Syracuse Railroad Company* (5 N. Y. 492); *Albro* v. *Agawam Canal Co.* (6 Cush. 75).

The only ground, then, which the law recognizes, of liability on the part of the defendant, is that which arises from personal negligence, or such want of care and prudence in the management of its affairs, or the selection of its agents or appliances, the omission of which occasioned the injury, and which, if they had been exercised, would have averted it. We are not now dealing, it must be remembered, with the liability which a railroad corporation assumes in respect to the safety and security of passengers transported on their road for a compensation, and in regard to whom they become absolute insurers against all defects which the highest degree of vigilance would detect or provide against. The liability here, if there is any, is measured by that lower standard which all the authorities recognize in the case of an employee, and which is answered if the care bestowed accords with that reasonable skill and prudence which men exercise in the transaction of their accustomed business and employments.

The ground of liability affirmed in this case, and on account of which a recovery was had, was the alleged weakness, decay and defectiveness of a bridge of the defendant, by the falling of which the death of the intestate was occasioned. The allegations of the complaint are, that the defendant did not use ordinary or reasonable care and diligence in providing a safe and suitable bridge over the Conhocton river, at the place in question; that before the breaking down of the bridge, the defendant had noticed that it was unsafe and insecure for the passage of trains thereon, and that defendant carelessly and negligently failed to cause a suitable examination to be made of said bridge for the purpose of ascertaining whether it was unsafe and insecure. It is further alleged that if any examination was made, it was made by

servants and agents who were careless and incompetent, to the knowledge of the defendant, and in the selection and employment of whom the defendant had not used ordinary care and diligence. With these allegations in view as constituting in the mind of the pleader the gravamen of the action, let us see what the case really disclosed, and in what respect it was presented to the jury.

At the close of the plaintiff's testimony there was a motion to nonsuit, founded on the alleged absence of any proof to show negligence, or of any knowledge or notice to the defendant of the unsafe character of the bridge, and this motion was renewed at the close of the testimony. The judge, in reference to this demand, held, that there was not any evidence for the jury to consider, relative to the original sufficiency of the bridge, nor any testimony impeaching the competency of the defendant's employees. He further stated, that there was only one question for the jury, and that was whether the board of directors themselves, as representing the defendant, and as distinguished from the employees, were guilty of negligence in not discovering the fact that the bridge was in an unsafe condition; that if the jury should be satisfied that the bridge was unsafe from decay, and that occasioned its fall, and the directors were guilty of negligence in not discovering the fact, the plaintiff would be entitled to recover, and that this question alone must go to the jury. To all which the defendant's counsel excepted.

At the close of the charge there was a request to instruct the jury in relation to the actual knowledge of the defendant's employees, and their omission to remedy such known defect, assented to by the court, which, if the defendant's counsel had been content to stand upon, would have actually precluded a recovery in this case; but I agree with the opinion of the Supreme Court, that this request and instruction was virtually waived by the counsel, and revoked by the court in the subsequent ruling, and that it may therefore on this appeal be laid out of the case.

The final instruction of the court, in answer to a request to charge that it was necessary to show that the decay in

the bridge, if it fell from decay, was known by some notice, or otherwise, to the president and directors, was that if the board of directors, by the exercise of that care and skill that is to be expected of persons occupying the same position, could, by the exercise of reasonable diligence and skill, have ascertained or known the defects in the bridge, the failure on their part to ascertain would make the defendant liable, because it is negligence, and substantially the same as if notice had been given to the board. To this propsition the defendant's counsel excepted.

There is a little vagueness, and perhaps inaccuracy, in the expression used as to the care and skill which was " to be expected in persons occupying the same position," which might possibly have tended to mislead or confuse the jury, had not the judge in the earlier part of the charge explained that the care and diligence which the directors were required to bestow, was that reasonable care, skill and foresight over the affairs of the corporation, which reasonable and prudent men occupying such positions ordinarily exercise under the same circumstances. With this qualification, then, I think the charge is not liable to any serious misconstruction, and presents with sufficient distinctness the proposition the judge was requested to charge, and the one he actually presented to the jury.

Let us see, now, what the case disclosed, upon the concession of all parties, and upon clear and uncontroverted evidence. We start with the admission that there was no question as to the original sufficiency of the bridge, and no impeachment, whatever, of the competency of the defendant's employees. Two leading and important averments of the complaint are thus disposed of *in limine.* It is then proved by evidence not sought to be contradicted, that, by these competent agents, a frequent inspection and examination of the bridge was made, the usual and accustomed tests, long employed, and deemed ample and sufficient, were applied to the structure in its various parts, and no imperfection or decay was detected, and none was visible upon an outward and external inspection; and, on the day before it

fell, a special observation was made of the bridge while a heavy train was passing over it, and no imperfection or weakness was discovered. If it be said that the test of boring the timbers was not applied, the answer may very well be, that this is no more a certain test than the one which was applied; that it had but rarely been used upon the bridges on the defendant's road, or, so far as the testimony shows, upon any other; and, carried too far, becomes, itself, a source of weakness; and that, while, after a catastrophe has occurred, it is sometimes easy and quite common to say, that if something else unusual and unthought of had been done, it might possibly have been averted, ordinary care and diligence, which is the acknowledged measure of the defendant's obligation, does not require the application of these unusual tests, nor the employment of the utmost possible safeguards.

There was one more element invoked to attach liability to the defendant consequent upon the fall of this bridge, and that was the length of time it had stood. It was constructed in the fall of 1855, and had remained until the time of the accident, a period of about nine and a-half years. The evidence showed that bridges of similar construction and materials upon the defendant's road had stood over ten years, and were considered, and to all appearances were, sound and safe; some had stood over fourteen years, and one over seventeen years, in the same condition. Although some of the witnesses for the plaintiff testified that they would not consider such a bridge as safe beyond the period of seven or eight years, yet, if, upon adequate and repeated inspection, and the application of appropriate tests, no defect was exhibited, a mere opinion as to the length of time such a bridge might be expected to stand, would have no appreciable weight in the scale of evidence. There is really, then, no conflict of evidence as to the care and skill used in the construction and maintenance of this bridge, the inspection to which it was subjected, the adequate skill and competency of the employees engaged in that specified duty, the experience of defendant, both in the construction and duration of

such structures, and the absolute want of any actual notice to defendant or any of its employees, of any defect real or suspected in this bridge. And this being so, upon undisputed evidence, the conclusion, in my judgment, is inevitable, that the defendant was not guilty of the want of such care in respect to their employees, as it was their duty (repre senting, as, it is conceded, the board of directors do, the corporation itself), to bestow upon its officers. If this con clusion is sound, then it seems very clear to me, that it was the duty of the court to take the case from the.jury, and hold, that, on the established facts, the plaintiff could not recover, but, that, at all events, the defendant was entitled to the instruction the counsel asked, to wit, that, in order to charge the defendant, it was necessary for the plaintiff to ·show that the decay in the bridge, if it fell ·from decay, was known, by some notice or otherwise, to the president and directors of the road.

The true principle applicable here is, I think, that, when the defendant has erected a structure to be used in its ordinary and accustomed business, without fault as to plan, mode of construction and character of materials, so that it was originally sufficient for all the purposes for which it is used, employs skillful and trustworthy agents to supervise, examine and test it, and that duty is performed with frequency, and with such tests as custom and experience have sanctioned and prescribed, it has exercised such care and skill as the law exacts of an employer in reference to his employee, and that no liability can attach to a party for a defect in such structure by which an employee has sustained an injury, unless there has been actual notice or knowledge that defects existed which, unless promptly remedied, would be liable to produce serious or fatal consequences.

A broader liability than this cannot be imposed without, in my opinion, breaking down and obliterating the distinction which exists between the responsibility incurred to a passenger and an employee, and the rule laid down by the court in this case would practically make the railroad company an insurer of the latter as well as of the former, and

in the words of a learned judge, in a parallel case, "a latent defect in a steam boiler, a rotten plank in a ship, a flaw in an iron rail, an unknown weakness in a floor, would charge the master with all the damages to his employees in consequence thereof."

A different and more stringent rule than I have thus suggested would impose an intolerable burden upon a board of directors, and, carried to its legitimate results, would require them to give their individual and personal attention not only to the construction, but to the actual existing condition of their road, with all its structures, appliances and machinery. They must supervise and constantly examine every locomotive, passenger and freight car, rail, tie, wheel, axle and break, and be responsible for the consequences that may arise to an employee from a latent defect, not cognizable by the senses of an experienced and skillful mechanic, nor capable of detection by the faithful application of well known, long used and approved tests.

The doctrine upheld by the court in this case, maintains in effect that a railroad corporation must have a board of directors, not only possessing adequate skill to determine whether its competent employees perform their duty, as between the corporation and its other employees, but if there be an omission of duty on the part of such skillful employees which the directors have themselves failed to discover, the corporation is guilty of negligence, and responsible to an injured employee for all the consequences resulting therefrom. Such a rule, I am persuaded, would not only carry their corporate liability beyond reason, but beyond the fair scope of any authority which has been invoked to maintain it.

I do not think it would be profitable to go over, in detail, the long array of authorities which have been cited by the counsel on both sides in this case, to sustain and justify their respective positions. They have been mostly collected, and the purport of them very fully and fairly stated in the opinion prepared by Mr. Justice Miller, upon the former argument of this case. I have carefully examined them, but

shall not venture to collate or comment upon them further
than to remark, that, while, on the one hand, some of them
contain statements and discussion of principles that may be
invoked in favor of the claim to recover, put forth by the
plaintiff's counsel, and sustained upon the trial of this cause,
none of them go the full length required to uphold the rul-
ing of the judge; while, on the other hand, several cases go
far, as I understand them, in maintaining the doctrine I seek
to apply to this case, and in one instance the decision is fully
and directly in point.

Thus, in *Tarrant* v. *Webb* (89 Eng. C. L. 795), it is held,
that a master is not responsible for an injury to a servant
from the negligence of a fellow servant, provided the master
uses reasonable care in the selection of the servant. JERVIS,
Ch. J., in this case, makes the significant remark, that the
master may be responsible where he is personally guilty of
negligence, but certainly not where he does his best to get
competent persons.

In the leading case of *Priestly* v. *Fowler*, cited *supra*, it
was held, that the servant could not recover of the master,
for injuries resulting from the breaking down of a van, aris-
ing from defective construction, where there was no proof of
knowledge on the part of the master of the defect, Lord
ABINGER remarking, that " the mere relation of master and
servant never can imply an obligation on the part of the
master to take more care of the servant than he may reason
ably be expected to do of himself."

In our own State, the point has never been fairly presented.
In *Kenyon* v. *Western R. R. Co.* (4 Seld. 175), the defendant
had express and repeated notice, through the reports of its
own servants, of the defectiveness of the engine, through the
explosion of which the injury to the plaintiff was occasioned.
In *Ryan* v. *Fowler* (24 N. Y. 410), the master had the same
notice of the defectiveness of the structure, through the
falling of which the plaintiff suffered the injury, for which
she recovered. In *Wright* v. *New York Central R. R. Co.*
(25 N. Y. 562), a recovery by an employee against the com-
pany for an injury occasioned by the conduct of another

employee was set aside, on the ground, that the action could not be maintained, unless the injury resulted from unskillfulness, for which the company was responsible. In discussing the principle applicable to cases of this character, Judge ALLEN says : "If the injury arises from a defect or insufficiency in the machinery, or implements furnished by the master, knowledge of the defect or insufficiency must be brought home to the master, or proof given that he was ignorant of the same, through his own personal negligence or want of care, — in other words, it must be shown, that he either knew or ought to have known the defects which caused the injury. Personal negligence is the gist of the action."

We have been cited to a number of cases in the courts of our sister States, none of which are very apposite to this precise case, excepting *Snow* v. *Housatonic R. R. Co.* (8 Allen, 441), which the plaintiff's counsel invokes as a clear authority in his favor, but which is susceptible of the criticism that the defect in the track, through which the injury was suffered, was palpable to view, and was known to, and was grossly neglected by, the track repairer, whose specific duty it was to remedy the defect ; and the case of *Hard* v. *Vermont Central R. R. Co.* (32 Verm. 473), which is precisely in point for the defendant, and holds this distinct proposition, that, although it is the duty of a railroad corporation to exercise all reasonable care in procuring sound machinery, and faithful and competent employees, and although they are liable to their servants for the neglect of this duty, yet, after having performed it, they are not liable to a servant for injuries occasioned by the neglect of any of his co-servants engaged in the same general business, even though the negligent servant be superior in grade to the one injured.

It is said, and it may be conceded, that this case is in advance of any decision yet made, where the principle is involved, but, if so, it is, in my opinion, a sound and judicious advance. It does not exonerate the directors of a railroad corporation from liability for personal negligence, nor discharge them from the obligation to perform their duty, if notice or knowledge of defects or insufficiencies is brought

home to them, and injury results to one of their servants from a failure to remedy the defect through which the injury occurs. It holds them to the highest measure of responsibility, for the proper construction of the road, its adjuncts and equipments, and the selection of competent and skillful subordinates to supervise, inspect and repair, and control and regulate its operation ; but, having faithfully performed these duties, it relieves them from the extreme rigor of a rule which would practically make them insurers of the absolute safety of, and indemnities for, every injury which an employee in their service might suffer from the act or omission of his fellow servant.

Since the argument of this case and the preparation of the foregoing opinion, my attention has been called to the case of *Wilson* v. *Merry*, decided in the English House of Lords in May, 1865, and reported in the law reports (Appellate Series, part 3) for July, 1868. It was a Scotch appeal, in a case where a verdict had been recovered against the proprietors of a coal mine, for the death of a party occasioned, as was alleged, by the defective construction of a scaffold in the mine. Without recapitulating the facts, it may be sufficient to state, that the case turned upon the liability of the master for an injury to his employee, where the master did not personally superintend the work, but devolved it upon a suitable mechanic, a foreman, superior in grade to the injured employee. Opinions were given by the present lord chancellor, Lord Cairns, and by the ex-chancellors, Lord Cranworth and Lord Cholmsford, all substantially concurring in the conclusion, that the duty of the master was to select proper and competent persons to do the work, and furnish them with adequate materials and resources for its accomplishment, and when he had done that, he had performed his whole duty. In the course of his opinion, Lord Cairns says : " The master is not, and cannot be, liable to his servant, unless there be negligence on the part of the master, in that which he, the master, has contracted or undertaken with his servant to do. The master has not contracted or undertaken to execute in person the work connected with his business, but

to select proper and competent persons to do so, and furnish them with adequate materials and resources for the work." He adds, "If the persons so selected are guilty of negligence, this is not the negligence of the master, and if an accident occurs to a workman to-day, in consequence of the negligence of another workman, skillful and competent, who was formerly, but is no longer, in the employment of the master, the master is not liable, although the two cannot, technically, be described as fellow workmen. Negligence cannot exist, if the master does his best to supply competent persons. He cannot warrant the competency of his servants." The case is very instructive, as containing the latest utterance of the highest court in England, and the opinions of all the learned lords maintain, with great distinctness and force, the principle of liability which I have endeavored, as well as I was able, to illustrate and enforce in the foregoing opinion, and which should, I think, govern in the disposal of this case.

The judgment should be reversed, and a new trial granted, with costs to abide the event.

All concurring, except HUNT, Ch. J., and MILLER, J.,
Judgment reversed.