MARY BRICKNER, Administratrix, &c., Appellant, *v.* THE NEW YORK CENTRAL RAILROAD COMPANY, Respondent.

(GENERAL TERM, THIRD DEPARTMENT, JULY, 1870.)

The plaintiff's intestate, employed by the defendant as a carpenter, was directed by the foreman of his gang to go, for the purpose of his labor, on a scaffolding erected in one of the defendant's shops, and which was apparently safe and properly constructed; but was, in fact, unsafe and dangerous, and had been constructed by unskilled and wholly incompetent persons, and of poor and insufficient material; and on the plaintiff's intestate stepping thereon it gave way, causing injuries which resulted in his death.—*Held*, that in the absence of proof by whom the persons constructing the scaffolding had been selected, or under whose directions it had been constructed, the presumption was that such persons had been selected by, and the scaffolding erected under, the direction of the defendant; that on the foregoing facts appearing in evidence, the burden was on defendant to show that competent persons had been selected, or the scaffolding constructed in a proper manner; and that it was error to nonsuit the plaintiff, on the ground that the injury to the deceased was caused by the negligence of a fellow servant, or that no knowledge of any incompetency of the defendant's servants, or of any defectiveness of the scaffold had been brought home to the defendant, or that the persons guilty of the negligence causing the injury, had not been employed by the defendant, but by a competent agent of the defendant.

THIS action was brought to recover damages for injuries received by the plaintiff, while in the employ of the defendant and in obeying the orders of one Westman, the defendant's employee, and was tried at a Circuit Court in Albany county in May, 1869. The facts are stated in the opinion. At the close of the testimony the plaintiff was nonsuited, which nonsuit was asked by the defendant upon the following grounds :

*First.* That there is no evidence of any negligence, on the part of the defendant, that caused or contributed to the injury of the deceased.

1st. There is no evidence that Westman was incompetent.

2d. If he was, not having been employed by defendant, but by a competent agent of the defendant, defendant is not responsible for the results of this incompetency.

3d. There is no evidence that Westman's incompetency or intemperance were in any way the cause of the improper construction of the scaffold.

4th. There is no evidence that Westman was in any respect at fault in relation to the construction of the scaffold.

5th. There is no evidence that the men who actually put up the scaffold, were incompetent.

6th. No notice of the defectiveness of the scaffold is brought home to the defendant, or to any of its officers or directors.

7th. There is no evidence that sufficient materials were not furnished by the defendant for a safe and good scaffold ; on the other hand, it appears affirmatively, that sufficient materials were furnished.

8th. No notice or knowledge of Westman's alleged intemperance, or Churchill's or Forman's alleged incompetency, or of any defect in the scaffold, is brought home to any officer or director of the company.

*Second.* That the deceased knew, or had means of knowledge, as to Westman's alleged intemperance, and as to the alleged incompetency of Forman and Churchill, and as to the defectiveness of the scaffold.

*Third.* The injury to the deceased was caused by the negligence of a fellow servant in the same general employment.

*Fourth.* The negligence of the deceased himself contributed to his injury.

*Fifth.* There is no material question of fact in the case on which there is conflicting evidence to submit to the jury.

*Sixth.* No cause of action has been proved.

The plaintiff's counsel submitted the following, as the grounds on which they claimed to recover:

*First.* That Westman was incompetent, and that notice thereof was brought home to Colby, his superior, who should have discharged him, and that notice to Colby was notice to the defendant.

*Second.* That this scaffold was a structure or machine furnished by this company to be used by these men in the course of their employment; and this man had right to assume that the company would exercise ordinary care and skill in making that safe and secure.

*Third.* That the boys who built that scaffold were incompetent and improper servants or agents for that purpose; and the evidence shows that they were in the general employ of the company for general purposes, and it must be presumed that they were there for this purpose among others.

Plaintiff's counsel requested the court to submit to the jury to find:

1st. Whether Westman was addicted to habits of intoxication to such an extent as to render him incompetent for his place; which request was denied, and the plaintiff excepted.

2d. Whether notice of the fact of Westman's habits of intoxication was brought home to the company; which request was denied, and the plaintiff excepted.

3d. Whether this scaffold was an unsafe structure; which request was denied, and the plaintiff excepted.

4th. Whether this scaffold was built under the direction of, and by this company; which request was denied, and the plaintiff excepted.

5th. The plaintiff's counsel requested the court to submit the whole case to the jury, on the testimony; which request was denied, and the plaintiff excepted.

The court thereupon granted the defendant's motion for a nonsuit, and the plaintiff duly excepted thereto.

*Isaac Lawson,* for the plaintiff.

*Matthew Hale,* for the defendant.

Present—POTTER and PARKER, JJ.

By the Court—POTTER, J.   A review of this case requires the statement of the leading facts proved on the trial.   The plaintiff's intestate, Frederick Brickner, was a carpenter, in the employ of the defendant, at West Albany, at the time of the accident which resulted in his death, and which occurred in October, 1867.   Brickner was at the time, and for some days previous, with three others, had been, engaged in putting sky-lights into the roof of the shop of the defendants; and, to effect this object, had built scaffolding below the roof, under the openings for the sky-lights, at a height of some twenty-five feet above the floor or ground of the shop. Three such sky-lights were to be constructed; and to do this, holes had to be cut through the roof, of the size of the sky-light.   The carpenters had to stand upon the scaffold while at work, and while raising up the timbers from below with which to construct them, laying the timbers when raised upon the scaffolds.   The first two of these scaffolds were constructed by three carpenters, of which Brickner was one. These two scaffolds answered all the purposes of their construction.   The third scaffold, which was built for the like purpose of being used for the carpenters to stand upon while constructing the third sky-light, was built by two young men of the ages of sixteen and eighteen, who were in the employ of the defendant, and who had little (if any) knowledge of the trade, one of whom had worked at the business but about two months.

When the three carpenters had finished the second sky-light, they were ordered by the defendant's foreman or boss carpenter, whose name was Westman, to go to work upon the third. The carpenters found the third scaffold constructed. They proceeded from the second sky-light, over the roof of the building, and stepped down upon the scaffold for the third sky-light through the hole cut in the roof for the sky-light, this being the only way to get upon the scaffold. Seen from above, this scaffold was, in its appearance, like the others which had been constructed by the carpenters; it was covered closely with boards cut out of the roof. Three of the carpenters got on this scaffold, and when the fourth, who was the plaintiff's intestate, stepped upon the scaffold, it gave way; he fell to the ground, receiving injuries which resulted in his death. The timber with which this scaffold was constructed was insufficient in size, strength or quality for a scaffold; and one of the sticks upon which boards were placed was cross-grained hemlock. There is the absence of evidence in the case that either of the directors of the defendant had any personal supervision, or gave directions in regard to any of the work at West Albany.

The directing power, there, so far as the proof shows it, is, that one Colby was master mechanic, under one Jones, and one Westman was boss of the gang of carpenters. That Jones and Colby were competent men, but there was proof that Westman indulged in habits of drinking, and was occasionally intoxicated; that Colby had threatened to dismiss him for that reason ; and some proof was given, that he was intoxicated at the time he ordered the carpenters upon the defective scaffold. The evidence is left uncertain, by whose direction it was, that these two boys constructed the defective scaffold. The carpenters who entered upon it, did not know. They were sent there to work upon it by Westman, who was the immediate boss of the gang of carpenters, and directed their work. Upon this statement, the first question, in fact, the only question, as it seems to me, is, was there any fact in the case, to be submitted to the jury? This is a question of

law.   The institutions of railroads in this country, as the great medium of individual and commercial transition, has introduced into our jurisprudence, new subjects of discussion in, and adjudications by the courts, as to the degree of care, caution, and diligence, demanded respectively, of master and servant, employer and employee, toward the other, as well as the degree of misconduct or negligence, which creates liability upon the one, or which estops the other from the making a claim for damages for injuries received, while engaged in the employment of such other.   To a certain extent, in given cases, we may regard the law as settled by our highest courts; but the ever varying cases, in fact, and feature, presented to the courts at *nisi prius*, calls upon that court, and the court of review, in the examination of a case thus changed in its presentation from every, other, to apply to it, first, what is the settled law of general and particular cases.   And to that portion which appears to be novel, or a variation from settled adjudications, to apply such general principles of common law as seem to be demanded by it.

In this case, we may perhaps assume, as a settled general rule, " that a master is not responsible to those in his employ, for injuries resulting from the negligence, carelessness, or misconduct, of a fellow servant engaged in the same general business." ( *Wright* v. *N. Y. Cent. R. R. Co.*, 25 N. Y., 564, and cases cited.)   As also, " the rule exempting the master, is the same, although the grades of the servant or employes are different, and the person injured is inferior in rank, and may be subject to the directions and general control of him, by whose act the injury is caused." (Id., 565.) A later case in the same court ( *Warner* v. *The Erie Railway Co.*, 39 N. Y., 471) lays down the following rule, which is not in conflict with *Wright* v. *N. Y. Cent. R. R. Co.*, *supra*, viz.: " The only ground, then, which the law recognizes, of liability on the part of the defendant is, that which arises from personal negligence, or such want of care, and prudence in the management of its affairs, or the selection of its agents, or appliances, the omission of which occasioned

the injury, and which, if they had been exercised, would have averted it."

The principle of this proposition is nearly identical with that contained in *Snow* v. *Housatonic R. R. Co.* (8 Allen, 444, 5), as follows: "Now, while it is true, on the one hand, that a workman or servant, on entering into an employment, by implication agrees that he will undertake the ordinary risks incident to the service in which he is to be engaged, among which is the negligence of other servants employed in similar services by the same master, it is also true, on the other hand, that the employer or master impliedly contracts that he will use due care in engaging the services of those who are reasonably fit and competent for the performance of their respective duties in the common service, and will also take due precaution to adopt and use such machinery, apparatus, tools, appliances and means, as are suitable and proper for the prosecution of the business in which his servants are engaged, with a reasonable degree of safety to life, and security against injury. The case of *Noyes* v. *Smith* (28 Vt. R., 63) is also a case adopting the same principle; and while it recognizes fully the rule "that a master is not liable to his servant for an injury occasioned by the negligence of a fellow servant in the course of their common employment," the court says "such rule has no application *where there has been actual fault or negligence on the part of the master, either in the act from which the injury arose, or in the selection or employ ment of the agent which caused the injury.*" This opinion is sustained by citing to its support the case of *Hutchinson* v. *Railway Co.* (5 Wells. Hurl. & Gordon, 352), which also thus qualifies the rule: "That the master shall have taken due care not to expose his servant to unreasonable risks." The Vermont court then lay down this rule: "The master, in relation to fellow servants, is bound to exercise diligence and care that he brings into his service only such as are capable, safe and trustworthy; and for any neglect in exercising that diligence, he is liable to his servant for injuries sustained from that neglect." It is not necessary that he should know

that they are unsafe and incapable. It is sufficient *that he would have known it if he had exercised reasonable care and diligence.* (See cases cited therein.) Some cases are found that hold the master is liable where he either knows or *ought to know* the dangerous character of the machinery or appliances furnished to the servant. "*He is chargeable with knowledge of the probable consequences of the acts he directed* or of which he was cognizant." (*Ryan* v. *Fowler*, 24 N. Y., 413; *Wright* v. *N. Y. Cen. R. R. Co.*, supra, 566; 8 Allen, 441.)

In the case of *Gilman* v. *The Eastern R. R. Corporation* (10 Allen, 233, 239), an employe of the defendant brought his action for an injury occasioned by the negligence of a switchman in failing properly to adjust the switch upon the track. The court held, that the plaintiff, being a fellow servant in the employ of the same railroad company, could not have recovered of their common master; but they add: "The evidence offered by the plaintiff at the trial was competent to show that the defendant, *knowingly* or in *ignorance*, caused by their own negligence, employed an habitual drunkard as a switchman and thereby occasioned the accident. Of the sufficiency of this evidence, a jury must judge. If the plaintiff can satisfy them that such misconduct or negligence in the defendant caused the injury, and that he himself used due care, he may maintain his action." In the same case they say: "It is well settled, both in England and America, that a master is bound to use ordinary care in providing his structures and engines, and in selecting his servants, and is liable to any of his fellow servants for his negligence in this regard." (See authorities cited in this case on page 238, and *Tarrant* v. *Webb*, 18 C. B. R., 797.)

If the case we are reviewing depended upon the question, whether a fellow servant could maintain an action against the common master, for the negligence, carelessness or misconduct of a fellow servant engaged in the same general business, it would be clear that the learned judge correctly ordered a nonsuit at the trial. This case, however, has evidence in it tending to sustain a different basis of right to recover, to wit:

The negligence of the defendant, in erecting an unsafe and dangerous structure, upon which the plaintiff was placed, or directed to go, to perform his labor; and the negligence of the defendant, in selecting proper and competent servants, or knowingly keeping intemperate and incompetent servants in their employ, by reason of which the plaintiff's intestate was, injured.   Upon this feature of the case we think the learned judge was in error, in not submitting the case to the jury, with proper instructions as to the law of the case, or with proper issues of fact to be found by them, upon which the law could be declared.

There was evidence in this case, of the incompetency of the persons who constructed the scaffold in question; the fall of which, caused the death of the plaintiff's intestate.   They were mere boys, sixteen and eighteen years of age, unlearned in the trade of carpenters, and as a natural consequence, inexpert, and unacquainted with the strength and support necessary for such a structure.   In the absence of proof, as to who directed them to construct this scaffold, the presumption must be, that it was the defendant, or the directing power of the defendant; some one who had the authority to direct.   If the presumption should be, that it was Westman, the boss carpenter, then the direction was given by one as to whose competency, by reason of his habits of intemperance, was a question of fact, properly for a jury.   It is entirely clear, that the scaffold, as a structure, implement, facility, or appliance by whatever name it may be called, was an unsafe and dangerous one; it was constructed by incompetent persons, and of poor and insufficient materials.   When this was proved, I think, the burden was upon the defendant of showing, at least, that it was constructed by a competent director of work, or competent fellow servant.   If the defendant, as master, directed these incompetent boys to construct this scaffold, then they are responsible for the consequences.

Perhaps we have gone as far as necessary, to show that it was error in the judge, to take this case from the jury.   I do not understand it to be urged as a ground for sustaining the

Brickner *v.* The New York Central Railroad Company.

nonsuit, that the plaintiff's intestate had been guilty of contributing negligence on his part; or, that the learned judge put his decision on that ground. Upon the argument of this case, the main point relied upon to sustain the ruling of the learned judge, was that no negligence was brought home to the defendant. That the business of employing and discharging men was left to Colby and Jones; and they being competent, whatever resulted from their negligence, is to be accounted the negligence of a fellow servant.

Though the case does not inform us *who* employed, either Jones, Colby, or Westman, as agents or operatives, it does appear that, among themselves, they took some rank, in the order of Jones, Colby and Westman. They were all called bosses by the workmen, which is doubtless a title of superiority, perhaps each in a different department. Jones was highest, but Colby employed and discharged men; and Westman was in charge of, and directed the gang of carpenters as to their work. As none but the principal has the right, to employ agents and servants, without a delegation of the power to do so, the presumption must be, in this case, in the absence of other evidence, that these three bosses were employed by the defendants, and each had delegated to him, power to direct.

It is claimed, that in cases of corporations who can only act by agents, that the directors may be regarded as the master, or principals, and that all others, all persons in their employ, whatever may be their rank, or the character of their employment, or duties, whether general superintendent, or the lowest grade of menial laborers; all stand upon an equality of co-laborers, or co-employes, as regards the question of negligence toward each other. This may be the rule where the executive power, the directing and superintending duties of the corporation, are performed by the directors in person, as was the case of *Warner* v. *Erie Railway Co.*, *supra.* I have not yet learned from any respectable adjudications, that a railroad, or other corporation, by appointing a superintending agent to transact all *executive duties*, and

surrendering to him, all right to perform such duties, retaining and exercising no power to discharge such duties themselves, can escape all legal liability as master; that the superintending and controlling agent in such case can be held to be, only a mere fellow servant, and co-laborer; the equal with all other employes of the corporation; or, in other words, that by this device, corporations can avoid having a master, to whom negligence or knowledge of defective, or insufficient machinery, implements, or appliances, can be brought home, so as to create liabilities. Such a doctrine is simply monstrous. Corporations would thus be absolved from all possible liability, and the sound old maxim, " *Qui facit per alium facit per se,*" would be abrogated. (See *Patterson* v. *Wallace,* 28 Eng. Law and Equity, 55.)

A corporation cannot act personally. It requires some person to superintend structures, to purchase and control the running of cars, to employ and discharge men, and provide all needful appliances. This can only be done by agents. When the directors themselves personally act as such agents, they are the representatives of the corporation. *They are then* the executive head or master. Their acts are the acts of the corporation. The duties above described are the duties of the corporation. When these directors appoint some person other than themselves to superintend and perform all these executive duties for them, then such appointees equally with themselves represent the corporation as master in all those respects. And though in the performance of these executive duties he may be and is a servant of the corporation, he is not in those respects a co-servant, a co-laborer, a co-employe, in the common acceptation of those terms, any more than is a director, who exercises the same authority. Though such superintendents may also labor, like other co-laborers and he may be in that respect a co-laborer, and his negligence as such co-laborer, when acting only as a laborer, may be likened to that of any other, yet, when by appointment of the master, he exercises *the executive duties of master,* as in the employment of servants, in the selection for adoption of

the machinery, apparatus, tools, structures, appliances and means suitable and proper for the use of other and subordinate servants, then his acts are executive acts, are the acts of a master; and then the corporation are responsible that he shall act with a reasonable degree of care for the safety, security and life of the other persons in their employ. These executive duties may also be distributed to different heads of different departments, so that each superintendent within his sphere may represent the corporation as master. In controlling and directing structures, in employing and dismissing operatives, in selecting machinery and tools, thus he speaks the language of a master. Then he issues *their* orders to *their* operatives. Then he is the mouthpiece and interpreter of their will. Their voice, which is silent, is spoken by him. He then only speaks their executive will, not the irresponsible will of a fellow workman or co-laborer. The corporation can speak and act in no other way. His executive acts are their acts. His negligence is their negligence. His control, their control. He has in this executive duty no equal. He is not, while in the performance of these executive duties, only the equal of the common co-laborer or co-servant. I do not discover in this view anything in conflict with the cases of *Wright* v. *N. Y. Cen. R. R. Co.* or *Warner* v. *The Erie Railway Co.* Those cases have not held, that when a corporation exercises its executive power by an agent or superintendent, that they are not liable for his negligence as such, because he is only a servant of the corporation. That step in advance is yet to be taken by the courts in this country. Before it is taken, I think the court will take into consideration the consequences of such a rule. I doubt if they will be found inclined to open a door which should allow corporations or individuals to escape all responsibility for accidents occasioned by negligence of their executive agents, and thus suggest the expediency of managing *all* institutions in that way.

We are referred by the brief of the defendant's counsel, to two cases recently decided in the English courts. (*Gallagher* v. *Piper*, 16 C. B., N. S., 669, and *Wilson* v. *Murry*, decided

in the House of Lords in 1868), which, it is said, held the rule that knowledge of negligence must be brought home to the defendants; and that it is not sufficient that knowledge of such negligence be brought to the defendants' general manager, if the foreman of the scaffold in the case of an insufficient scaffold. I have not had access to the books containing those holdings, and the statement from the brief does not show us, whether the master or defendants in those cases, themselves, had personal charge of their own business, or whether the whole charge of the management was committed by the master to a superintendnet and general manager. That is a distinction I have regarded as important, if not controlling, and have not felt bound in this court, to adopt the rule as it is claimed. I do not think it could be endured in this country. But the negligence referred to in the English case of *Wilson* v. *Murry*, was the negligence of a competent and skillful workman, not the negligence which consists in employing an incompetent and unskillful one through whose incompetence the injury happened. A very clear difference.

This case shows an absence of all evidence, as to the actual power of those persons who exercised executive duties. The apparent authority, in such case, must be presumed to be the real authority. There were facts in the case that should have been presented to the jury. It was error to nonsuit.