ANDREW J. SIZER *v* THE SYRACUSE, BINGHAMTON AND NEW YORK RAILROAD COMPANY.

(GENERAL TERM, FOURTH DEPARTMENT, MAY, 1872.)

Employes in special and dangerous services should be fitted, by the habits of carefulness, obedience, &c., which are necessary, for their safe performance.

If one is employed for such services with knowledge of his lack of such fitness, *e. g.*, one known to be disobedient where the safety of his fellow-servants requires implicit obedience, the employer is liable to his other servants or employes for injury resulting from such lack of fitness; but it is otherwise where knowledge of the unfitness is not brought home to the employer; or it seems to one who acts for the employer (a corporation) in hiring employes for the service.

THIS was a motion for a new trial by the plaintiffs upon a case and exceptions ordered to be heard in the first instance at the General Term. The facts are stated in the opinion.

*Pratt, Mitchell & Brown*, for the plaintiff.

*Geo. N. Kennedy*, for the defendant.

Present—MULLIN, P. J., JOHNSON and TALCOTT, JJ.

MULLIN, P. J. The plaintiff was in the employ of the defendant in January, 1870, in coupling cars and making up freight trains in its yard in Syracuse.

A locomotive engine was used in moving the cars when making up trains. The engine so used was operated by an engineer employed by defendants for that purpose; and while the engine was thus used the engineer was under the direction and control of the person employed in making up the trains.

On the morning of the 21st of January, 1870, an engine

of the defendant called the Syracuse was employed under the direction and control of the plaintiff in making up a freight train in the defendant's yard. Frank Harvey was the engineer in charge of the said engine. Harvey had been for several months in the defendant's employ as fireman; and while so acting occasionally ran an engine, but was not and did not claim to be competent to run an engine as engineer.

The engineers are taken, as a general rule, from those who have acted for a considerable period of time as firemen, but are not entrusted with the charge of an engine until they have acquired experience in running engines under the supervision of a competent engineer.

On the morning in question the plaintiff directed the engineer, Harvey, to move two freight cars on to a bridge in said yard; and the cars were moved accordingly, and then the engine was stopped and the plaintiff proceeded to block the wheels of the cars. After that was done he desired the engineer to move forward the engine a little so as to enable plaintiff to uncouple the cars from the engine. The engine was put in motion as directed, the coupling pin taken out, and the plaintiff placed his left foot on the iron rail in front of the forward wheel of the tender in order to get on to the engine; the engine was put in motion while plaintiff's foot was on the rail, the wheel passed over the foot, crushing three of his toes so that amputation became necessary. The engine was stopped to enable plaintiff to remove the coupling pin on a grade descending, in the direction in which the engine was moving, of thirty to fifty feet per mile. The engineer started the engine without orders from plaintiff, while he was in the act of getting on to the engine.

There were many other facts proved, but they do not change those above stated. The court nonsuited the plaintiff on the ground that it was not proved that the injury resulted from any want of skill on the part of the engineer; that defendant was liable to plaintiff only for negligence in employing as engineer a person whom it knew to be incompetent when the

injury complained of was the result of want of skill, but it was not liable for injuries caused to one of its employes by the negligence of another.

I will not consume time in an examination of the cases in which the question has been considered, when a master is liable to a servant employed by him for injuries resulting from the acts or neglect of another servant. ALLEN, J., in *Wright v. The N. Y. Central R. R. Co.* (25 N. Y., 562), has collected all the cases upon the question then decided, and from them has deduced certain principles which he holds conclusively established by the cases.

The fourth of the principles which he finds to be established is stated by him in these words:

The master is liable to his servant for an injury happening to him from the misconduct or personal negligence of the master, and this negligence may consist in the employment of unfit and incompetent servants and agents, or in furnishing for work to be done or for the use of the servant machinery or other implements and facilities improper and unsafe for the purposes to which they are to be applied.

The employer, he says, does not undertake with each or any of his employes for the skill and competency of the other employes employed in or about the same service, or for the sufficiency and safety of the implements and materials furnished for the work, or for the convenience or comfort of the laborer, since neglect and want of due care in the selection and employment of the agent or servant, through whose want of skill or competency an injury is caused to a fellow-servant, must be shown in order to charge the master.   *   *   *

Personal negligence is the gist of the action. It is not enough that the foreman and general superintendent of the work is guilty of negligence causing injury to the subordinates.

The fifth principle the learned judge holds to be decided is, that the servant cannot recover for injuries resulting through the unskillfulness of his fellow-laborers, if he has the same

knowledge or means of knowledge of the unskillfulness that the employer has.

The sixth principle decided is, that it is not sufficient to charge the master for injuries to his servant that others of his employes were unskillful or incompetent, unless the injury complained of resulted from these causes.

If it was occasioned, notwithstanding such defects, by the negligence of a fellow-servant, the master is not responsible. (*Warner* v. *Erie Railway Co.*, 39 N. Y., 468.)

I entertain no doubt but that the principles thus laid down by the learned judge, state correctly the law of this State regulating the liabilities of masters for injuries caused by one of their servants to another.

There was sufficient evidence to carry the case to the jury on the question whether Harvey, the engineer, had such measure of skill as to make him competent to run an engine.

The superintendent who employed him knew the extent of his experience in the duties of an engineer, and it would seem to have been grossly careless to place such a man in so responsible a position.

But it does not appear that the injury to the plaintiff resulted in any degree from the want of skill on the part of the engineer, unless it was caused by the voluntary movement (if I may so call it) of the engine down the track, and which movement the engineer had omitted to guard against by applying the tank brake. The engineer says he thinks he did not start the engine after plaintiff had given the order to start ahead a little, but he is not positive about it. The grade is so descending that the engine will not remain stationary unless the tank brake is applied.

It is not pretended that this brake was applied. If the injury was done while the engine was in motion, without any agency of the engineer, the question would then arise whether the omission to apply the tank brake was the result of ignorance or carelessness. If the former, the defendant might be liable.

But the answer to this view of the case is, the plaintiff

himself testifies that the engineer did start the engine after he had uncoupled the cars, and while he (plaintiff) was in the act of getting on the engine, without orders so to do.

The engineer was clearly guilty of disobedience of orders. Whether his conduct was careless or reckless is not very material; it was disobedience to orders, that led to the injury.

The life of the man in the employ of the railroad company who makes up trains and uncouples cars, is at the mercy of the man in charge of the engine employed in the work.

The latter must be under the control of the former, and must render to him the most implicit obedience. If he does not, the most fatal consequences will almost inevitably follow.

The company owe it to those engaged in coupling and uncoupling cars to exercise the highest care in the selection of engineers to manage engines used in making up trains; men of strictly temperate habits, men who are careful, cool, discreet and obedient, only should be employed; and if men wanting these qualities are knowingly employed, and injury results therefrom, the company is as liable to the employe injured as if the engineer was unskillful.

The witness Ehl, on cross-examination, testifies that he had seen Harvey run an engine in drawing sand, and told Dawson, the person who employed the men engaged in the defendant's yard in running engines and making up trains, that he, Harvey, was careless in handling his engine and shifting cars in the yard. The witness, in answer to the question, What did you see him do that you regarded as carelessness? says: Not paying attention to signals and a great many things; breaking bumpers by his carelessness in shifting engines. He told Dawson that Harvey was not a fit man to run a shifting engine.

Had this been told to Dawson before the injury to plaintiff, and Dawson had, with knowledge of Harvey's character, continued to employ him, defendant might be responsible.

But the witness says he cannot say whether it was before or after plaintiff was hurt that he told Dawson that Harvey was careless.

Unless it was before the injury, the defendant would not be liable.

I am unable to discover any way to get over this defect of plaintiff's proof.

The nonsuit was right, and the motion for a new trial must be denied, and judgment ordered for defendant.

Judgment for defendant.