PATRICK KING, RESPONDENT, *v.* THE NEW YORK CEN-
TRAL AND HUDSON RIVER RAILROAD COMPANY,
APPELLANT.

*Negligence — duty of master to keep in repair machinery used by servant.*

It is the duty of a master to see that his servants shall be under no risks from imperfect or inadequate machinery; and he is liable for any injury which may arise from his neglect to keep the same in repair, as well as for any imperfection in its original construction.

MOTION for a new trial, on exceptions ordered to be heard in the first instance at the General Term, after a verdict in favor of the plaintiff, and from an order denying a motion for a new trial made on the judge's minutes.

This action was brought to recover for injuries alleged to have been sustained by the plaintiff in consequence of the falling of a derrick belonging to defendant; such accident being alleged to

have resulted from the negligence of the defendant in not furnishing a sufficient derrick, and also in not using due diligence in keeping the derrick in order. The answer denies the alleged negligence and avers that the injuries complained of were caused by the negligence of the plaintiff and his fellow laborers.

The defendant had placed a derrick on a dock belonging to it to aid in transferring steel and iron rails from boats to its cars and had contracted with one Dillon to unload the rails at a certain price per rail. A portion of the derrick fell on the plaintiff while engaged in hoisting a rail and inflicted the injuries to recover damages for which this action was brought.

It was claimed by the defendant that the plaintiff was a partner of Dillon, while it was claimed in his behalf that he was merely an employe.

*Mathew Hale*, for the appellant.

*Amasa J. Parker*, for the respondent.

LEARNED, P. J.:

It seems to me that some of the doctrines of *Wright* v. *New York Central Railroad* (25 N. Y., 562) have been modified. *Warner* v. *Erie Railway* (39 N. Y., 468) seems to establish that it is the duty of the master, not only to erect a structure to be used in his business without fault as to plan, construction and materials, but to supervise, examine and test it as frequently as custom and experience require. *Laning* v. *New York Central Railroad* (49 N. Y., 521) says that the duty to the servant is, that he shall be under no risk from imperfect or inadequate machinery. It is a duty to be affirmatively and positively fulfilled and performed. If the duty of the master is, that the servant shall be under no risks from imperfect or inadequate machinery, this certainly imposes some duty of maintenance as well as of original construction. It would be idle to say that the master was under an obligation to provide a safe machine in its original construction, but that he might allow it to become utterly and notoriously unsafe without incurring any obligation. In the language of the case last cited, the duty is not performed " until there has been placed for the

servant's use, *perfect* and adequate physical means." So, too, the case of *Coughtry* v. *Woolen Co.* (56 N. Y., 126) declares that the duty of the defendants toward any person invited to go upon the structure was "to use proper diligence in its construction and *maintenance.*" And, on principle, the nature of the obligation must be the same. Of course, when a man has made a safe structure, he may reasonably expect that it will remain safe for a time. How long will depend on the nature of the structure and its use. How soon he must, as a prudent man, cause it to be examined, will depend on the circumstances of each case. But, I think, the decisions require from him reasonable attention to the matter, according to the amount of wear which the use of the machine causes. This was stated by the court in its charge: "It was further their [the defendants'] duty, as the derrick was in continued use, to examine it from time to time, and to make repairs when needed, so that persons using it could do so with safety." The court further charged, that if the plaintiff knew, or had reason to know, that the machine was dangerous, and continued to work, he could not recover. And further, that if there was a contract on the part of Dillon to take the responsibility of inspecting the machine and reporting its defects, and the plaintiff knew of this, he could not recover. This was sufficiently favorable to the defendants. An agreement by Dillon relieving the defendants from a duty imposed upon them by the law, should not take away from the plaintiff the right to have a safe machine provided for him — at least when he was ignorant of such agreement. If, as the cases hold, the defendants owed a duty to the plaintiff of providing and *maintaining* a safe machine, and then made an agreement with Dillon to repair, when notified by him, this did not release them from their duty to the plaintiff without his consent. The charge of the court stated the law carefully; and, as to the defendants' requests, it is well said by the Supreme Court of the United States: "It is not error for a court to refuse to give an extended series of instructions, even though some of them may be correct in the propositions of law which they present, if the law arising upon the evidence is given by the court with such fullness as to guide correctly the jury in its findings." (*Railway Co.* v. *Whitton's Admr.*, 13 Wall., 270.)

The exceptions to the admission of evidence, with the qualifying remarks of the court in respect to them, do not, I think, warrant a new trial.

JAMES, J. (dissenting):

In April, 1872, the defendant erected upon the dock in Albany, a derrick for removing railroad iron from vessels to defendants' cars. The derrick, according to the evidence, was of suitable material, and sufficiently strong and well built for the purpose. It was not then of improper construction or unsafe. A contract was made by defendant with one Dillon, to remove the iron from the vessels to cars at that time, at four cents per rail, using the derrick. It was further agreed that defendant was to repair the derrick whenever they reported any thing was wrong. Dillon made an arrangement with plaintiff and others, by which they were to do the work and divide the pay equally between them. Plaintiff had worked the previous year in the same place and manner with Dillon and others. On the 1st of July, 1872, when plaintiff, Dillon, and others, were at work removing iron, the hook which held the tackle block to the top of the derrick broke, whereby a rail fell upon plaintiff and he was injured. The evidence shows that such break was caused by the gradual wearing away of the iron of the hook, until it was too weak to sustain the strain. Upon a claim that defendant was negligent in not keeping the derrick in repair, and in a safe condition to use, this action was brought, and a recovery of $4,000 had. In *Wright* v. *N. Y. C.* (25 N. Y., 562) Judge ALLEN laid down the rule of liability in such cases as follows : " The master is liable to his servant for any injury happening to him from the misconduct or personal negligence of the master, and this negligence may consist * * * in the furnishing for the work to be done or for the use of the servant, machinery or other implements * * * improper and unsafe for the purposes to which they are to be applied * * * and if the injury arises from a defect or insufficiency in the machinery furnished to the servant by the master, knowledge of the defect or insufficiency must be brought home to the master, or proof given that he was ignorant of the same through his own negligence or want of proper care ; in other words, it must be shown that he either knew, or ought to have known, the defects which caused the

injury. Personal negligence is the gist of the action." Again, under the fifth subdivision, he says : " If the servant, sustaining an injury through  *  *  *  defects in the machinery furnished by the employer, has the same knowledge or means of knowledge of the deficiencies referred to as his employer, he cannot sustain an action for the injury, but will be held to have voluntarily assumed all the risks of the employment, incurred, as they were, by the  *  *  * defective machinery used in the work." Again, in the sixth subdivision, he says : " If the injury was occasioned, notwithstanding such defects, by the negligence of a fellow servant, the master is not responsible." For these positions numerous authorities are cited by the learned judge.

From these principles, the following application may be made upon the facts of the present case.

The defendant, under its contract, was bound to furnish to its workmen under the contract a suitable and safe derrick. That was done. There was no liability of the defendant, therefore, in this respect. The company did not undertake, nor is it liable, for the continued sufficiency or safety of the derrick, except in case it knew or ought to have known of the defect or insufficiency. It is not claimed the company or its agents had actual notice of the defect in this hook. The contrary appears. Nor is there any reason for asserting that defendant or its agents ought to have known of such defect. By the contract the plaintiff and his associates, his copartners, were to give notice of defects, and defendant was then to repair. The duty to repair existed as well in the absence of, as with the contract. The only effect of the contract in that respect was to impose the duty upon the plaintiff and his associates, who were the only persons using the derrick, to examine it and give notice of any defects, that defendant might repair. The contract adds still greater strength to defendant's exemption from liability, under the principle that the servant had greater knowledge or means of knowledge of the deficiencies of the derrick than the defendant, and consented to assume the risks of the employment and of his own negligence in respect to the examination of the machine, which he was constantly using, and detection of its defects. It is not clear how the defendant can be made responsible to plaintiff for want of proper care and vigilance in the inspection of the

derrick and the discovery of its defects, when, by contract, it had exempted itself from such liability, imposing that duty and the duty of giving notice of any defect, on the plaintiff and his partners. If the defendant was guilty of negligence in this case, how much greater was the negligence of the plaintiff and Dillon?

I do not understand that the principles stated have since been controverted or doubted. They are still a correct exposition of the law. The case of *Coughtry* v. *Globe Woolen Co.* (56 N. Y., 124) is clearly distinguished from the present action. That was a case of neglect by the woolen company to furnish its servants machinery or implements originally well constructed and safe. It was a defect of original construction, for which, under the principles above cited, the party was responsible. If the original structure was perfect, no liability would ensue for injury to a servant by reason of defects thereafter occurring, unless the defendant had notice of such defects, or ought to have known of them in the exercise of ordinary care and prudence.

Plaintiff was, upon the proofs, a partner of Dillon in the work and in the use of this derrick. I do not see that it would modify the case, if, instead, plaintiff had been the servant of Dillon. The right to recover, and the principles upon which a recovery might be had, would be the same in either event. The negligence of Dillon is imputable to plaintiff; certainly plaintiff can have no greater claim against the defendant than if he had been its servant.

If the foregoing conclusions are justified, the learned judge at the Circuit so far over-stated the legal principles as to convey to the jury the impression that, in the absence of a contract absolving defendant, the defendant would be absolutely liable for any defects in this derrick which might during its use occur, irrespective of notice of such defects; that such liability arises from defendant's neglect to examine and inspect the derrick from time to time. It seems to me also to have been error to charge that plaintiff might recover if ignorant of a contract by which defendant was absolved from the duty of inspecting and watching the condition of the derrick, and Dillon had assumed that duty. If the guarded language of the charge raises doubts as to the justness of these criticisms, I think the refusal of the judge to charge the second and third requests removes such doubts. Those requests were:

Second. That if the agreement between Dillon and defendant was, that Dillon was to report to defendant's agent if repairs were needed, and that defendant was to make necessary repairs when such report was made, defendant cannot, upon the evidence in this case, be held guilty of negligence in regard to the hook in question, no report or notice of its insufficiency having been given to defendant or its agents. The court declined so to charge otherwise than had been charged.

Third. That under his agreement with Dillon, the plaintiff is in no better condition to maintain this action, than Dillon could have been, if he, instead of the plaintiff, had been the person injured by the accident in question. The court refused so to charge. I submit that both these propositions are sound law upon the facts presented, and that it was error to refuse to charge as requested. In this case a proper machine is furnished for Dillon and his associates, to use in the performance of defendant's work. They are set to work with it under an agreement that defendant shall make all necessary repairs upon being notified by Dillon and his associates that such repairs are needed. Neither Dillon nor his associates ever give notice of any defects, or ask for any repairs. They are constantly using this particular machine ; they are competent to inspect and judge of its sufficiency, strength and safety. The particular defect through which the injury happened, could have been easily discovered, if an attempt had been made. Indeed, by the evidence of one witness, the condition of the hook could be seen from the dock. Is it saying too much when it is claimed that the defendant would not be liable? A more rigid rule would make masters guarantors of the safety of every piece of machinery, of every instrument, appliance or tool, put into the hands of a servant, so long as it was used by him. It would exempt every servant from the use of ordinary care and prudence. It would practically extinguish the distinction between the liabilities for injuries to passengers and employes. (*Warner* v. *Erie Railway*, 39 N. Y., 468, remarks of BACON, J., 475, 476.)

Flynn, one of Dillon's associates, was asked by plaintiff's counsel this question : "Whose duty was it, as you understand, when each of these contracts were made between Dillon and the company, and you were present, to inspect and examine that derrick and keep

it in order ?" It was answered, subject to objection and exception: " I suppose it was Mr. Chittenden's." Then the further question: " Q. The company you mean ? A. Yes." This evidence seems to me clearly inadmissible. Flynn was called by plaintiff to make out his case. After plaintiff had rested, defendant called Flynn and examined him as to the contract for making repairs, and what was said, and by whom. On his cross-examination, the above question was put and answered. I do not think these facts make any difference. The question asked for an opinion or conclusion of the witness, and not for a fact. It was as improper under the circumstances, upon cross-examination, as it would have been upon a direct-examination. Ordinarily not much consideration should be attached to such an error. But here the question calls for the opinion of the witness on a most important point. That is the most important question submitted by the court to the jury. " Did the defendant absolve itself from the duty of inspecting the derrick ?" is the judge's charge. This witness is allowed to determine that fact by his opinion or conclusion from all he heard.

It was error also to allow proof that, after the accident, double irons were ordered put upon the derrick, and were so put on. (*Dougan* v. *Champlain Trans. Co.*, 56 N. Y., 1.) Perhaps, however the subsequent suggestion of the court that the evidence would be stricken out if the defendant desired it, has cured the error.

But upon the main question presented, I think the order denying a new trial should be reversed, and that a new trial should be granted, costs to abide the event.

Present — LEARNED, P. J., BOARDMAN and JAMES, JJ.

Order affirmed, with costs.