SAMUEL LANING, Respondent, *v.* THE NEW YORK CENTRAL RAILROAD COMPANY, Appellant.

The duty of the master to the servant, and the implied contract between them, is to the effect that the master shall furnish proper, perfect and adequate machinery or other materials and appliances necessary for the proposed work, and also shall employ skillful and competent fellow-servants, or shall use due and reasonable care to that end. This duty or contract is to be affirmatively and positively fulfilled and performed. It is not enough that the master selects one or more general agents of approved skill and fitness, and confers upon them the power of selecting, purchasing or hiring. If the general agent carelessly places by the side of the servant another unskilled and incompetent, and damage results to the servant in consequence, the master is liable; and this is so, whether the incompetency or want of skill of the fellow-servant existed when he was hired, or has come upon him since, and he has been continued in service with notice or knowledge, or the means of knowledge, upon the part of the master, of the defect. It is the duty of the master to his servant to discharge from his service, upon notice thereof, any other servant, who, from any cause, has ceased to be competent and skillful. (The case of *Wright* v. *N. Y. C. R. R. Co.*, 25 N. Y., 562, limited and explained.)

Where the servant has full and equal knowledge with the master that the machinery or materials employed are defective, or that the fellow-servant is incompetent, and he remains in the service, this may constitute contributory negligence; but if it appears that the master has promised to amend the defect, or other like inducement to remain has been held out to the servant, the mere fact of his continuing in the employment does not of itself, as matter of law, exonerate the master from liability, but the question of contributory negligence is one of fact for the jury. (ALLEN, J., dissenting.)

Defendant employed a competent and skillful agent, whose duty it was to employ men for a particular department of its service. The agent hired one W. as foreman, who was competent at the time of employment, but subsequently acquired habits of intoxication which rendered him at times incompetent. This was known both to plaintiff and the agent. Evidence was given, however, tending to show that the agent, upon complaint of plaintiff, stated to the latter, that if W. did not do better he would have to discharge him. W., while intoxicated, directed two incompetent and unskillful men to erect a scaffold upon which plaintiff was directed to work. Defendant had furnished sufficient, good and proper materials wherewith to build the scaffold, but, from the unskillfulness and incompetency of the men employed in the construction, it was so defectively built that it fell while plaintiff was upon it and he

was injured. The defect was mainly in using improper and insufficient materials. In an action to recover for the injury,—*Held* (ALLEN, J., dissenting): 1st. That defendant was chargeable with the negligence of its agent in retaining W. in its employ after he had knowledge of his incompetency. 2d. That it was a question of fact for the jury, whether under the circumstances the fact of plaintiff's remaining in defendant's employ with knowledge of the incompetency of W., was contributory negligence upon his part.

Also, held, that it was competent to prove, by the declarations of the agent to plaintiff, knowledge upon the part of the former of the incompetency of W.

This court is not authorized to review a judgment and reverse it for an alleged error which does not appear upon the record, and is only shown by expressions in the opinion of the court below.

(Argued December 20, 1871; decided May 28, 1872.)

APPEAL from order of the General Term of the Supreme Court in the third judicial department, affirming an order of Special Term denying a motion for new trial and refusing to set aside verdict in favor of plaintiff.

This action was brought to recover for injuries received by plaintiff while in defendant's employ, through the alleged negligence of the latter.

Plaintiff was a carpenter in the employ of defendant. The facts appear sufficiently in the opinion.

*Matthew Hale* and *Samuel Hand* for the appellant. A master is not liable to one servant for injuries occasioned by the negligence of another. (*Farwell* v. *The Boston and Worcester R. R. Co.*, 4 Met., 49; *Priestly* v. *Fowler*, 3 M. & W., 1; *Brown* v. *Maxwell*, 6 Hill, 592; *Wright* v. *N. Y. C. R. R. Co.*, 25 N. Y., 562; *Wilson* v. *Merry*, L. R., 1 Scotch App., 326; *Warner* v. *Erie Railway Co.*, 39 N. Y., 468.) This rule applies to a railroad corporation as well as to a person. (*Hard* v. *Vt. Central R. R. Co.*, 32 Vt., 473; *Warner* v. *Erie Railway Co.*, 39 N. Y., 468; *Wilson* v. *Merry, supra; Wright* v. *N. Y. C. R. R. Co., supra; Gallagher* v. *Piper*, 16 C. B. [N. S.], 669.) The rule includes negligence of a servant in employing workmen for a given work. (*Wright* v. *N. Y. C. R. R. Co.*, 25 N. Y.,

572.) A superior is liable only for his own negligence; he cannot warrant the competency of his servants. (*Tarrant* v. *Webb*, 5 L. J. [N. S.] Cr. P., 263; 89 Eng. C. L., 795; *Warner* v. *Erie Railway Co.*, 39 N. Y., 468; *Wright* v. *N. Y. C. R. R. Co.*, 25 id., 566, 567.) There was no negligence on the part of defendant in failing to furnish suitable means and materials. (*Wigmore* v. *Jay*, 5 Exch., 352; *Feltham* v. *England*, L. R., 2 Q. B., 33; *Wilson* v. *Merry*, L. R., 1 Scotch App., 326.) Knowledge by plaintiff of the incompetency of his fellow-laborers, or the insufficiency or defectiveness of the machinery, was a bar to his recovery. (*Priestly* v. *Fowler*, 3 M. & W., 7; 25 N. Y., 566, 567, and cases cited; *Loonam* v. *Brockway*, 3 Rob., 74; *Davis* v. *Det. and Mil. R. R. Co.*, 20 Mich., 105.) The court erred in admitting Coleby's declarations in regard to Westman. (*Luby* v. *H. R. R. R. Co.*, 17 N. Y., 131, 133.) The court below erred in deciding it had no power to reduce the damages without granting a new trial. (*Russell* v. *Cown*, 20 N. Y., 81; *Murray* v. *H. R. R. R. Co.*, 47 Barb., 96; 3 Graham and Wat. on New Trials, 1162, 1165; *Hodges* v. *Hodges*, 5 Met., 205.)

*A. J. Parker* for the respondent. The retaining of Westman in defendant's employ, after his incompetency was known to Coleby, was such negligence as rendered defendant liable for the injuries resulting therefrom. (*Wright* v. *N. Y. C. R. R. Co.*, 25 N. Y., 565; *Snow* v. *Hous. R. R. Co.*, 8 Allen, 441; *Myers* v. *Smith*, 28 Verm., 59; *Fifield* v. *Northern R. R. Co.*, 42 N. H., 225; *Hayden* v. *Smithfield Manufacturing Co.*, 29 Conn., 548; *Buzzele* v. *Laconia Co.*, 48 Maine, 113; *Ryan* v. *Fowler*, 24 N. Y., 410; *Keegan* v. *Western R. R.*, 4 Selden, 175; *Connolly* v. *Patton*, 41 Barb., 366; *Patterson* v. *Wallace*, 28 Eng. Com. L. R., 50; *Warner* v. *E. R. Co.*, 39 N. Y., 468.) Knowledge of and notice to Coleby of Westman's intemperance was notice to the company. (*Fulton Bank* v. *N. Y. and Sharon Canal Co.*, 4 Paige, 137; *Ingalls* v. *Morgan*, 10 N. Y., 104; *Snow* v. *Hous. R. R. Co.*, 8 Allen, 447.) The neglect or want of

skill of the master's general agent employed in procuring help and machinery is the act of the master. (*Gilman* v. *E. R. R. Co.*, 10 Allen, 230; *Hard* v. *Verm. Central R. R. Co.*, 32 Verm. Rep., 473; *Ryan* v. *Fowler*, 24 N. Y., 410; *Wiggett* v. *Fox*, 36 Eng. L. and Eq. R., 486; *Myer* v. *Smith*, 28 Verm. Rep., 59; 5 Am. Law Reg. [N. S.], 274; *Warner* v. *Erie R. Co.*, 39 N. Y., 478; *Louisville Co.* v. *Collins*, 5 Am. Law Reg. [N. S.], 265; *Little Miami R. R. Co.* v. *Stevens*, 20 Ohio, 415; *Hoben* v. *Burlington Co.*, 20 Iowa, 562; *C. C. & C. R. R. Co.* v. *Keary*, 3 Ohio [N. S.], 201; Redfield on Railways, 386, 390.)

Folger, J. Viewing the case as the jury would have been warranted in doing, it comes in the main to this.

The plaintiff with others, he and they being fellow-servants of the defendant, were engaged in the course of their ordinary service, in the performance of a work for the defendant, to do which it was necessary that there should be put up a scaffold for them to stand upon.

One Westman, the foreman of these men, directed one Churchill and another to put up the scaffold. There is some dispute in the testimony as to who the other was; but the jury might properly have found that one Foreman was the person who, by direction of Westman, helped Churchill. Churchill had been in the employ of the defendant for some months, engaged in different kinds of subordinate service. It is not shown for what particular service, if for any particular service, he was hired by Coleby, who was the agent of the defendant to hire these men. Nor was it shown that he was not skillful and competent to do that for which he was hired, and in fact to do all that was put upon him to do before the task of building this scaffold. Foreman is not shown to have been hired by the defendant. Coleby testified that he did not know him and that his name was not upon the pay-rolls of the defendant. The plaintiff testified that the day of the accident was the first day on which he had seen him there. Churchill could not say that Foreman had worked there after

the accident; but there was testimony that he was at work on that day, with Churchill, in putting up this scaffold. The jury could rightly find, or infer from what was testified, that Foreman was in fact at work on that day in the defendant's business and that, by the direction of Westman, Foreman and Churchill put up this scaffold. (See *Althorf* v. *Wolfe*, 22 N. Y., 355.) The scaffold fell with some of the men upon it, and the plaintiff was seriously injured by the fall, he being among those upon it by direction of Westman.

The scaffold fell from a defect in its construction; this defect was mainly from building it with timbers too small in size, and too poor in quality, being cross-grained and hence weak.

There was no lack of good and proper material, which could have been as readily got at. Indeed, there was an abundant supply of proper material; but the insufficient timbers which were used were taken from the mass by Churchill and Foreman, either from a lack of skill to select better, or from a lack of faculty to perceive the necessity of using stronger, or from a lack of strength to handle and lift larger and heavier timbers, or from these three causes combined. It was, at all events, from the unskillfulnes and incompetency of Churchill and Foreman for this particular work, that the scaffold was so unsafely built that it fell.

The plaintiff knew that the scaffold was built by some of those there engaged at work. He did not know who were the individuals that built it, nor the manner in which it was built, not having seen it while they were building it, nor until by the direction of the foreman he stepped upon it.

Westman the foreman, was a competent man in skill and natural judgment. It does not appear that, at the time he was hired for the defendant, he had acquired any habit which detracted from his competency. At the time of this work, however, he was not temperate in strong drink. The testimony tended to show that he was drunk on the day, and near the time of the accident. The testimony does not show directly, though it is an inference which a jury might make

fairly, that his condition in that respect was a cause of the injury to the plaintiff; for they might well infer that, if his faculties had been without confusion from strong drink, he would not have put these lads, deficient in judgment and strength, to a work requiring discretion and power, or would have inspected the result of their work before using it.

The plaintiff well knew the habits of Westman in this particular, and knew that he was drunk on this day, not only at the time of the accident, but before, and that he had been drunk on days before that. The testimony tended to show that Coleby had knowledge of Westman's habits. The jury might so have found.

Such being the fact, if the plaintiff has ground of action against the defendant for this injury and the resultant damage, it must be found in the want of skill, and in the incompetency of Churchill and Foreman and in the use of them by Westman for the work of erecting the scaffold. Indeed, it may be stated yet more narrowly, and it must be found alone, in the use of these two young men for this work by Westman. For it is not shown that Churchill was hired for this kind of work, or for work of this importance to others. The employment of him was not like that of one to act as an engineer for the peculiar duty of managing an engine, or as a switchman to attend to a switch, but it was general. The proof shows that the labor he performed was miscellaneous, not altogether that of a mechanic; and the particular work to which he went was not because he was hired for that specifically, but because he was set at that by his immediate superior. From the time of his hiring until this occurrence, it does not appear that he was incompetent to do that for which he was employed and at which he was put. It does not appear that Foreman was hired at all by the defendant, or by Coleby their agent to hire men. Coleby, who hired the men, and had hired Churchill, neither hired him for this purpose, nor did he set him at this work; on the contrary, Coleby testified that this scaffold was built without his knowledge, and that he had instructed Westman, the plaintiff, and the others who

were to risk themselves upon the scaffold, to build the first two, and showed them where they should get the lumber for the purpose, and in this he is not contradicted. It is not possible then to contend that the defendant was negligent in the fact of taking generally into its employment Churchill, or suffering Foreman to labor without especial hiring, though for some kinds of service they were without skill and were incompetent, so long as they should not be put at that which they were not competent and skillful to do. The negligence was in putting them to the service of erecting this scaffold. It begins there and dates no farther back. And it is upon the basis of that negligence that the defendant must be found liable, if liable at all. And conceding that there was negligence in directing these lads to the work of putting up this scaffold, that negligence cannot be traced further back than to Westman. For he, thus put in charge of this gang of men, to supervise and direct them in this work, was supplied by Coleby his immediate superior, with other competent men in numbers enough, and with fit material. It would not have been Coleby's negligence if Westman had not used the fit material. It was not Coleby's negligence that Westman did not use the competent men.

With the reservation however, from these last two statements, of any negligence of Coleby, in continuing in the employ of the defendant a man of Westman's habits after notice or knowledge thereof.

Nor, with the same reservation, was it the negligence of the defendant, or of any of its agents, other than Westman.

We have thus presented to us this case. One servant of a common master is injured by the negligent act of a fellow-servant of a rank one step higher. The act of negligence in the fellow-servant is the result of an incompetency which did not exist when he entered the employment of the master. It is not permanent, but occasional, and produced by evil habits, the existence of which was known before and at the time of the injury, both to the servant injured and to the hiring agent of the master.

Most of the principles of law which are to be applied to these facts, and to determine the relative rights of the servant injured and the master, are settled in this State, and must be conceded.

A master is not liable to those in his employ for injuries resulting from the negligence, carelessness or misconduct of a fellow-servant engaged in the same general business. Nor is the liability of the master enlarged when the servant who has sustained an injury is of a grade of the service inferior to that of the servant or agent whose negligence, carelessness or misconduct has caused the injury, if the services of each, in his particular labor, are directed to the same general end. And though the inferior in grade is subject to the control and directions of the superior whose act or omission has caused the injury, the rule is the same. Nor is it necessary, to exempt the master from liability, that the sufferer and the one who causes the injury should be at the time engaged in the same particular work. If they are in the employment of the same master, engaged in the same common work and performing duties and services for the same general purposes, the master is not liable.

These rules seem to have been laid down with care, after due consideration, to be sustained by reason, to have been assented to by more than a bare majority of this court, in at least two instances, at some interval of time, and should be adhered to in any case the facts of which bring it within the purview of them. (See *Wright* v. *N. Y. C. R. R.*, 25 N. Y., 562; *Warner* v. *Erie Railway*, 39 N. Y., 468; and the cases cited in them.)

The cases cited hold, further, that the master is liable to a servant for his (the master's) own personal negligence, or want of care and prudence, and for his own personal act or misconduct occasioning injury and damage to the servant. And such negligence, want of care and prudence, act or misconduct, may be shown in the mismanagement of the master's affairs in the selection and employment of incompetent and unfit agents and servants, or the furnishing of improper and

unsafe machinery, implements, facilities or materials for the use or labor of the servant. (Id.)

And to charge a master with liability to one servant for an injury on the ground that he has selected and employed another unskillful and incompetent servant, it must appear that the injury complained of was the result of the want of skill and competency of the other. (25 N. Y., *supra*.)

So far, we doubt not that the learned counsel for the appellant and respondent respectively would agree. But just here arise points of difference.

The appellant claims, as we understand its position to be, that it acts through a board of directors, and acts immediately in no other way; and that when the board of directors, itself composed of discreet, prudent and honorable men, has selected and employed skillful and competent general servants, agents or superintendents, it has done its whole duty to the servants of lower rank, who shall in turn be selected and employed by those of general powers and duties. The negligence, it is claimed, of these general servants, agents and superintendents, is not the negligence of the corporate body, nor of the board of directors through which in the first instance the corporate body acts; but that it is, so far as a servant of the corporate body in any rank is concerned, the negligence of a fellow-servant, for which the master is not liable. And it is claimed that the rule we have above extracted (to wit : that the negligence, want of care and prudence, act or misconduct of the master, may be shown in the selection and employment of incompetent and unfit agents and servants) is only applicable when such selection or employment is by the master in person, and not through a general or superior agent; and that such rule is to be governed by the other rule extracted above (and which the defendant claims to be), that the master is liable to a servant only for *his own personal* negligence or want of care and prudence, and for his own personal act or misconduct occasioning injury and damage to the servant. And, indeed, taking another rule above given, in the full scope of the general language in

which it is laid down, unrestricted by the considerations and the circumstances of cases which must always affect and limit most general rules in some degree, it is to be confessed that it seems that they have literal show of authority for their position. It is said that if two servants are in the employ of the same master, engaged in the same common enterprise, and performing duties and services for the same general purposes, the master is not liable. (25 N. Y., *supra*, p. 565.) Now, it is apparent that the agent who selects a machine to be used in the business of the master, speaking generally, is in the employment of the same master. He is engaged in the same common enterprise, and performing a duty and a service for the same general purposes of the master. And so of the agent who selects and hires men to act in that business. It is necessary for that business, to aid the common enterprise, and to advance those general purposes, that machines should be had and men hired, and the agent who attends thereto performs a service to that end. The position has also in its favor a judicial assertion more specific than this. In *Wright* v. *N. Y. C. R. R.* (*supra*), the learned judge who delivered the opinion, after intimating (p. 571) that it is at least debatable whether the defendant in that case was responsible to the other of its servants for the proper performance of the delegated power in the selection and hiring of engineers by Upton, the agent of the defendant, who was charged with that duty, goes on to say : That in the exercise of power there in question (which was to select one from a body of engineers to run an engine on a particular trip), Upton was acting as the servant of the company, in concert with every other person having any duty to perform, in respect to that particular purpose ; and after saying (p. 572) that the cases cited show that for the negligence of a foreman or a superintendent the master is no more liable than for the negligence of any other servant, he remarks that it can make no difference in principle that the negligence is in the selection of the materials, the implements or the agents for the performance of a given work, instead of directing the time, mode or manner of doing the work.

And this proposition has more significance, from the fact that the decision of this court in the case, reversed the judgment of the Supreme Court therein, in giving which the court held: "That the power to employ servants may be delegated by the principal, and this must generally be so when the principal is a corporation. When the principal so acts by agent, he will, upon general principles, be liable for the negligence of the agent. This agent will not be regarded simply as a fellow-servant of those whom he employs in the general business." ( *Wright* v. *N. Y. C. R. R.*, 28 Barb., 80, 86.)

If we adopt the statement in 25 N. Y., and apply it to the facts of the case at bar, we must say that the defendant is no more liable for the negligence of Coleby in continuing the employment of Westman, though he was incompetent from drink, than for the negligence of any other servant; nor any more liable for the negligence of Westman, in directing to the putting up of this scaffold of two incompetent men, though that negligence was the result of his own temporary incompetency, his liability to recurrence whereof was known to Coleby, the agent of the defendant to employ and dismiss servants. And upon this the learned counsel for the appellant relies to sustain the position taken by it. They cite to us no other case which so holds. *Warner* v. *Erie Railway* (39 N. Y., *supra*) was the case of a structure originally sufficient, but rendered unsafe by gradual decay, which decay, under the careful inspection of competent agents, in modes deemed sufficient by skillful and practical men, had not been discovered. *Wilson* v. *Merry* (L. R. [1 Scotch App.], 326) was the case of a negligent act of a competent servant. *Gallagher* v. *Piper* (16 C. B. N. S., 692) was also a case of negligence, not of incompetence. *Hard* v. *Vt. Cent. R. R.* (32, Vt., 473) was the same.

While the reports of this State seem to be meager in authority in this particular point, the question has been somewhat discussed and decided in other States. (See *Gilman* v. *East R. R.*, 13 Allen, 433 ; *Noyes* v. *Smith*, 28 Vt., 59 ; *Hard* v. *Vt. and Can. R. R.*, *supra* ; *Frazier* v. *Penn. R.*

*R. Co.*, 38 Penn. St., 104; *Walker* v. *Bolling*, 22 Ala., 294.)

It is well maintained, in these cases, that if the position of the appellant is upheld in its full extent, it will, in most cases, relieve a corporate body, and any employer who acts through general superintendents, from liability to servants for injuries occasioned by imperfect and defective machinery, by unsafe mechanical means and appliances of any kind, and by all incompetent and unskillful sub-agents furnished without due care. And this statement of the learned judge in *Wright* v. *New York Central Railroad* was not necessary to the disposition of the case. Sufficient reasons for the judgment of the court had already been found in the fact that the injury complained of did not result from the incompetency or unskillfulness of the fellow-servant, whose act, it was claimed, had occasioned it, and, perhaps, in the fact that the plaintiff knew the perils of the service and continued in it, voluntarily assuming the risks; and in the further fact that the servant complained of was competent, and that there was no negligence in selecting him for the work. We may decline, then, to be bound by it, so far as this question is concerned. We should not hold as there enunciated, unless it is the clear result of former decisions. The duty of the master to the servant, as it is sometimes put (25 N. Y., 556), or his implied contract with his servant, as it is differently intimated (*Farwell* v. *B. and W. R. R.*, 4 Metc., 49), leads to another conclusion. That duty or contract is to the result that the servant shall be under no risks from imperfect or inadequate machinery, or other material means and appliances, or from unskillful or incompetent fellow-servants of any grade. It is a duty or contract to be affirmatively and positively fulfilled and performed. And there is not a performance of it until there has been placed for the servant's use perfect and adequate physical means, and for his help-meets fit and competent fellow-servants; or due care used to that end. That some general agent, clothed with the power, and charged with the duty to make performance for the master, has not done his duty at all, or has not done it well,

neither shows a performance by the master, nor excuses the master's non-performance. It is for the master to do, by himself or by some other. When it is done, then and not until then his duty is met or his contract kept. The servant then takes the risk of the negligence, recklessness or misconduct of his fellow in the use of the material and implements furnished, and of their failure from latent defects not revealed by practical tests, and from deterioration by the usual wear and tear. It is not enough to satisfy the affirmative duty or contract of the master that he selects one, or more than one general agent of approved skill and fitness. If the general agent goes forward and carelessly places by the side of a servant another unskilled and incompetent, the duty of the master has not yet been met, his contract is yet unperformed. Corporate bodies must, of the necessity of their being, act through agents, and in the large enterprises and business pursuits of the times, the necessity is almost as stringent upon very many other employers. But they may not avoid the duty which they owe to their servants of furnishing them with sound mechanical contrivances, and accompanying them with competent fellows, by conferring upon superior servants the duty of selecting and purchasing or hiring.

The duty being that of the principals, and theirs the contract; it is theirs to fulfill and perform, and if it is not done, or insufficiently done, the failure to do is theirs. As is well said, "if a master's personal knowledge of defects be necessary to his liability, the more he neglects his business and abandons it to others, the less will he be liable." (BYLES, J., in *Holmes* v. *Clark*, *infra*.) We hold, therefore, that a master is liable to his servant for an injury caused by the incompetency or want of skill of a fellow-servant, whether it existed when the fellow-servant was hired, or has come upon him since the hiring, the fellow-servant having been in the first instance hired, or afterward continued in service, with notice or knowledge or the means of knowledge of this lack. The duty of the master to his servant is to use reasonable care to provide and employ none but competent and skillful

servants, and to discharge from his service on notice thereof any who fail to continue such.

And applying this rule to the case in hand, we are of the opinion that the defendant was negligent towards the plaintiff, in retaining Westman in its service, after his habit of drinking to drunkenness was known to Coleby, its general agent for hiring and discharging men of the class of Westman.

Here, however, comes in another rule, which affects the relations of master and servant. A servant has no cause of action against a master for an injury resulting from the negligence of the master, where the servant's negligence contributed to the taking place of the injury. And where a servant knows as fully as the master of the existence of that which is at last the producing cause of the injury, and continues, without promise of amendment of the defect, of his own accord in the master's employ, exposed to the effects when they shall come, it may constitute contributory negligence on his part to remain thereafter in the service. (*Assop* v. *Yates*, 2 H. & N., 768; *Hayden* v. *S. Manuf'g Co.*, 29 Conn., 548; *Skip* v. *E. C. Railway Co.*, 24 Law and Eq., 396; *The Mad. Riv. & L. E. R. R. Co.* v. *Barber*, 5 Ohio St., 541; and see *Bassett* v. *The Nor. & Wor. R. R. Co.*, 9 Law Rep., 551.)

The learned counsel for the respondent cites *Snow* v *Hous. R. R.* (8 Allen 441), as a contradiction of the principle maintained in these cases. But an examination of it shows that the plaintiff therein was not a servant of the defendant therein. He was in the employ of the Western Railroad Company, which company, by contract with the defendant there, used its road and track for making up trains, etc., at the place where the plaintiff was injured. And the learned chief justice, in delivering the opinion of the court, says: "It does not appear that he (the plaintiff) was employed in any duty or service for or on behalf of the defendants; on the contrary, it is stated that he was in the employment of another corporation. * * * * On these facts it is difficult to see how the doctrine applicable to a claim for damages occasioned by the carelessness of a fellow-servant against a

common employer can have any bearing on the rights of the parties to this action."

The court, in that case, recognizes the existence of the rule now under notice, but concludes that it does not apply to the facts of that case. (See page 450 of the report.) In *Gilman* v. *East. R. R. Co.* (*supra*), cited by the learned counsel, the question now under consideration was not passed upon, and was expressly ignored as not raised on the trial. (See page 445 of the report.) We have read the other cases cited by the learned counsel on this point, and apprehend that no ruling will be found in them different from that above expressed by us. While all of them hold that it is the duty of the master to provide safe and sufficient machinery and appliances, and skilled and competent agents and servants, none of them assert that if the servant, who knows as well as the master of a lack in these respects, is injured thereby, he is not open to the imputation of a contributory negligence; and the reason why is simple but sufficient. It is at his option ordinarily, to accept or to remain in the service or to leave it; and if he remains without promise of a change or other like inducement, it is for the jury to say whether or not he voluntarily assumes the risks of defective machinery and of incompetent servants, whereof he has full and equal knowledge.

The case does not show but that Westman, when first he came into the employ of the defendant, was competent in all respects. His incompetence and unfitness subsequently occurring were temporary and occasional, the result of evil habit. They had come to the knowledge of Coleby, who had power to act, so that it was negligent for the defendant to retain Westman in its employ. But it is apparent that the plaintiff knew as well, and indeed far better than any one else, the habits of Westman, and his particular condition on that day. The strength of the affirmative testimony on both of these points is from the plaintiff's mouth. The plaintiff knew that the building of this scaffold was going on. He knew that neither of the persons who had built the other two

safe scaffolds was engaged in the erection of the third, which fell; for those men were occupied where he was, a short distance away from it. He knew that men, under the direction of Westman, were putting it up, and as they were not of the three persons who had together built the two scaffolds, he knew that Westman had taken others for the third. He knew that Westman was drunk on that day and at that time. If it was negligence in Coleby and the defendant to suffer Westman, in that state, to remain in the control and direction of men and work, was it not negligence in the plaintiff to remain in the defendant's employ, subject to Westman's direction and liable to evil results from work done under his supervision, likely to be an insufficient and negligent supervision from his perceptions being clouded and dulled by drink? But, in this case, whether the plaintiff was so negligent as to be contributory to the injury which he received, was a question for the jury. For Laning had testified that Coleby had said to him, that if Westman did not do better he would have to discharge him. It has been held that there is a formal distinction between the case of a servant who knowingly enters into a contract to work on defective machinery and that of one who, on a temporary defect arising, is induced by the master, after the defect has been brought to the knowledge of the latter, to continue to perform his service under promise that the defect shall be remedied. (See 10 W. R., *infra.*) And the fact that after Laning had entered the services of the defendant, he acquired knowledge of the intemperate habit of Westman, was a fact in the case to be submitted to the jury, to be considered by them, together with this promise of Coleby and all the other facts and circumstances, in determining the question whether the plaintiff himself helped to bring about the accident for which he seeks to charge the defendant. (*Holmes* v. *Clark*, 10 W. R., 405.) Knowledge in such a case is not of itself, in point of law, an answer to the action. (Id.) It has, indeed, been carried farther than the circumstances of this case require. (*Hoey* v. *Dub: and Belf. Railway Co.*, 18 W. R.,

930; Ir. Com. Pl. And see *Huddleston* v. *Lowell Machine Shop*, 106 Mass., 282; *Britton* v. *G. W. Cotton Co.*, Law Rep., 7 Exch., 130.)

It is now to be seen what was the action of the court below on this question, and what exception the defendant has taken to bring that action under review.

The defendant, when the plaintiff rested, and also when the proofs were closed, moved that the plaintiff be nonsuited on the ground that the negligence of him and his fellow-employes contributed to the accident. But there was enough in the testimony to justify the court in denying, as it did, that motion.

Two of the requests to charge, made by the defendant at the trial, were addressed to the question of the plaintiff's knowledge of Westman's habit, and the contributing negligence of the plaintiff by reason thereof; but each of them is based upon the idea that the knowledge of the plaintiff of the incompetency of Westman was a bar to a recovery, and not merely a fact to go to the jury with the other evidence; from all of which they were to determine whether the plaintiff was to be charged with negligence contributory to the injury. These requests were, therefore, properly refused.

The court upon this subject charged the jury that the plaintiff's knowledge of the fact of Westman's intemperance would not exonerate the defendant from responsibility; yet, it called upon the plaintiff to exercise more caution, care and judgment than he otherwise would have done, and that he was bound to exercise ordinary care and caution in view of that fact. The defendant excepted to so much thereof as instructed the jury that knowledge of the fact in the plaintiff did not exonerate the defendant. In our view the learned judge at circuit was correct in that; the charge was to the effect that in this case knowledge was not of itself, in point of law, an answer to the action. (See cases above cited.)

\*　　\*　　\*　　\*　　\*　　\*

The requests to charge, which were refused, assumed as proven what was yet to be determined *pro* or *con.* by the jury,

or rested upon propositions of law which we think were not sound, or upon propositions of law which though sound in themselves did not comprehend all the facts of this case, or assumed as established as fact in the case what was not in the testimony.

The declarations of Coleby, the admission of which in evidence was objected to by the defendant, were properly received. He was the agent of the defendant, with the power and the duty of hiring and discharging servants. He had the power to discharge Westman for any fault amounting to incompetency. His neglect to do so, after knowledge on his part of a reason why he should, was the neglect of the defendant, and it was competent to prove by his own declarations that he had such knowledge, made as they were to the plaintiff in the case. They were part of the *res gestæ*, and had a bearing upon the question of the contributory negligence of the plaintiff.

There is one other point made by the defendant, which requires notice.

The verdict for the plaintiff was for the sum of $10,000. A motion was made at Special Term to set aside this verdict as one against evidence, and that the damages are excessive. The motion was denied. From the order of Special Term denying it, the appeal was taken to the General Term, where a new trial was denied, and judgment ordered for the plaintiff on the verdict. The defendant claims here that the General Term was of the opinion that the damages were excessive, but also of the opinion that it had no power to reduce them, and no power to do aught but grant a new trial for that reason, which for that reason alone it declined to do. The defendant claims that the General Term having the power to reverse the judgment and order a new trial, unless the plaintiff should stipulate to reduce his recovery to a sum which the court should name, and to order that, if he did so stipulate, the judgment should be affirmed for that sum, it erred in not exercising that power.

It is true that it was a matter of discretion with the court

at General Term, whether it would make such order, and if it had exercised that discretion and refused to make it, no error would exist. But if having the power so to do, it failed to use it on the ground that the power was not in it, there is error which may be reviewed and corrected.

The claim of error here under notice is to be sustained, if at all, not upon anything shown in the order of the court at General Term, nor upon the judgment entered thereon, nor upon anything which appears in the record. The opinion delivered at General Term, if it can be used, shows plainly that if the court there had deemed that it had the power to reduce the damages, still leaving a recovery, it would have exercised it, but that it was of the opinion that it could effect that end only by granting a new trial for that reason, and that the excess of damages was not of itself quite sufficient to warrant an order for a new trial.

But we are not authorized to review a judgment, and to reverse it for an alleged error which does not appear upon the record, and is not shown or to be arrived at, save by expressions appearing in the opinion of the court.

The judgment must be affirmed with costs to the respondent.

All concur except ALLEN, J., dissenting, and RAPALLO, J. not voting.

Judgment affirmed.