WILLIAM E. MARSH, APPELLANT, *v.* CHARLES F. CHICK-ERING AND GEORGE II. CHICKERING, RESPONDENTS.

*Master and servant — when the question of the servant's negligence in using defective machinery, after a promise of the master to repair it, should be left to the jury.*

The plaintiff, who was employed by the defendants to light a lamp at the entrance of a building owned by them, testified that while trying to light the lamp the ladder used by him broke; that he met one of the defendants that night, told him of the accident, and suggested that the new ladder should have hooks on it, to which the defendant assented, and told him to see the superintendent and have the new ladder hooked and spiked; that the plaintiff saw the superintendent several times, and requested that the new ladder should be hooked and spiked, and that the superintendent promised that it should be done; that when the new ladder arrived without hooks or spikes, he complained to the superintendent, who promised he would have them put on; that he continued to use the ladder until on one stormy night it slipped and he fell to the ground and broke his leg.

In an action to recover for the injuries so sustained, *held,* that the question as to whether or not the plaintiff was guilty of contributory negligence in continuing to use the ladder, with knowledge of its defective condition, after the promise of the superintendent to have it repaired, should be submitted to the jury.

APPEAL from an order made at circuit, dismissing the complaint, and directing the exceptions to be heard in the first instance at the General Term.

*A. R. Dyett,* for the appellant.

*Spencer C. Doty,* for the respondents.

BRADY, J.:

The plaintiff was in the employment of the defendants and it was a part of his duty to light two lamps outside of the building known as Chickering Hall, and at the entrance thereof. Upon the trial he testified that the first ladder used by him was a new one, which became " wet and frosty " lying under the stoop, and broke while he was using it ; that upon the night of this occurrence he met Mr. Charles F. Chickering, one of the defendants, and told him that he had met with an accident, stating what it was and suggested to him that he ought to have another ladder with hooks on

it; to which Mr. Chickering responded: "Yes, I think so, too, and you had better go down and see Mr. Burrill, the superintendent, and tell him to get another ladder and have it hooked as you want it — hooked at the top and spiked at the bottom." It appears, further, that the plaintiff made the communication to Mr. Burrill, as instructed by Mr. Chickering, two or three times, and requested that the new ladder, which had been bought by order of Mr. Chickering, by Mr. Burrill, should be hooked and spiked, and that Mr. Burrill promised to do as he was requested in this regard. It further appears that the plaintiff used the new ladder the first night it arrived and without spikes or hooks, but complained of it to Mr. Burrill, who again promised to have it hooked and spiked; Mr. Burrill expressly promising that he would have it attended to. The plaintiff continued to use this ladder until, it appears, on a very stormy night, described by him as a terrible night, when it was blowing, raining, snowing and sleeting, he went outside to light the lamps which, it would seem, was necessary, because there was an entertainment to be given in the hall on that night. It was about five minutes before seven. He succeeded in lighting seven out of the eight burners of the south lamp, and on lighting the eighth burner the ladder slipped with him and he fell and broke his leg. And it appears that the ladder slipped because there was nothing to hold it; in other words, it was not hooked and spiked, or either, as contemplated by the promise which was made to the plaintiff by Mr. Chickering and Mr. Burrill, the latter of whom, it would seem, was the person selected to do the work as the superintendent. The case contains, also, the evidence of experts, that hooks and spikes on ladders used for the purposes of lighting lamps similar to those at the hall of the defendants, are necessary to keep them firm and inferentially to prevent accidents such as that which occurred to the plaintiff. The plaintiff testified also, in relation to the subject, that when the promise was made to him by Mr. Burrill, that the ladder should be fitted with hooks and spikes, he believed that it would be done and relied upon the promise and continued to use the ladder.

When the plaintiff rested the counsel for the defendant moved to dismiss the complaint upon the following grounds, viz.:

*First.* That the injury alleged in the complaint was occasioned by the negligence of the plaintiff.

*Second.* That the injury alleged in the complaint did not happen from the negligence of the defendants.

*Third.* That the injury to the plaintiff happened by an act to which the plaintiff contributed, and to which the defendants in no way contributed.

*Fourth.* That the alleged injury to the plaintiff was not caused solely by the neglect of the defendants.

*Fifth.* That the defendants never instructed the plaintiff to use the ladder.

*Sixth.* That the plaintiff used the ladder of his own volition, and in the exercise of his own judgment and discretion, without any instructions or suggestions from the defendants.

*Seventh.* That the defendants are not liable for the reason that the plaintiff was specially employed by the defendants, and the plaintiff, therefore, assumed to act for himself and choose the methods by which he should perform his work.

*Eighth.* That the plaintiff had the same means that the defendant had of knowing that the ladder was unsuitable and defective.

The motion was granted and the plaintiff duly excepted. The counsel for the plaintiff asked to go to the jury, both on the question of the negligence of the defendants and the plaintiff's contributory negligence, which motion was denied and an exception to such denial duly taken.

The principles enunciated in the case of *Laning* v. *The New York Central Railroad* (reported in 49 N. Y., 521) are applicable to and controlling upon the question presented for consideration in this appeal. Among other expressions used by the court in the elaborate opinion of Folger, J., we find the summary of a rule applicable to actions of this character, namely: "And where a servant knows as fully as the master of the existence of that which is at last the producing cause of the injury, and continues, without promise of amendment of the defect, of his own accord in the master's employ, exposed to the effects when they shall come, it may constitute contributory negligence on his part to remain thereafter in the service," the learned justice citing a number of cases of which this rule is predicated. And it was held in that case that although the plaintiff knew that Westman, the person who was superintending the erection of the scaffolding upon which he was to work, was

drunk on the day that the scaffold was finished, and although it might be negligence for the plaintiff to remain in the employment of the defendant subject to the direction of Westman and liable to evil results from work done under his supervision, which was liable to be an insufficient and negligent supervision from his perception being clouded and dulled by drink, yet, nevertheless, the question of contributory negligence to the injury received was a question, for the jury. And the case of *Holmes* v. *Clark* (10 W. R., 505) was approved, in which it was held that there is a formidable distinction between the case of a servant who knowingly enters into a contract to work on defective machinery and of one who, on a temporary defect arising, is induced by the master, after the defect has been brought to the knowledge of the latter, to continue to perform his service under promise that the same shall be remedied.

And this proposition seems to be sustained by the case of *Hough* v. *The Texas and Pacific Railroad Company* (Rep., vol. 9, p. 193), and to be recognized by Mr. Cooley in his work on Torts, 559, in which, upon the authority of cases cited, he states the rule to be that if the servant, having a right to abandon the service because it is dangerous, refrains from doing so in consequence of assurances that the danger shall be removed, the duty to remove is manifest, imperative, and the master is not in the exercise of ordinary care unless or until he makes his assurances good. Moreover the assurances remove all ground for argument that the servant by continuing the employment engages to assume the risk.

These adjudications are sufficient to sustain the legal conclusions that the continuance of the use of the ladder by the plaintiff, after promises on the part of the defendants that it should be so constructed as to remove the pending danger, was not *per se* negligence on his part, although it might be so declared by the jury upon a consideration of all the surrounding facts and circumstances, and that whether it was or not is a question to be submitted to the jury. It is fairly inferable from the nature of the plaintiff's employment, and from the character of the defendant's hall, that the lighting of the lamps was a necessity in the transaction of their business and must be done; and as it was the plaintiff's duty under his employment to do it, it must be done by him and the danger assumed. He seems to have been impressed with the necessity of having

guards placed upon the ladder, and as soon as that condition was attained, and which seems to have been after the first accident related by him, he advised the defendants and received promises that the protection suggested should be furnished in the improvement of the ladder with the design to accomplish its greater safety. He continued to discharge his duties under the promise, under protest, as it were, because he rested upon the belief that the defendants would discharge the duty they owed him, and whether under the circumstances he voluntarily accepted the danger was a question about which the jury might or might not entertain any doubt.

The circumstances referred to should all have been submitted to the jury for their consideration under the authorities, and it was an error therefore to take the question from the jury. It was a right of the plaintiff's to have them pass upon it, and to determine it either for or against the plaintiff, as well as the defendants' negligence in omitting to do what the latter had admitted was necessary for the security of the plaintiff in the discharge of the duties of his employment.

For these reasons we think the complaint was improperly dismissed, the exceptions well taken, and that a new trial should be ordered, with costs to abide the event.

DAVIS, P. J., and DANIELS, J., concurred.

Judgment reversed, new trial ordered, with costs to abide the event.