MARGARET DALEY, AS ADMINISTRATRIX, ETC., RESPONDENT,
v. BERNHARD SCHAAF AND FRANK SCHAAF,
APPELLANTS.

*Negligence — liability of a master to a servant injured by the negligence of a fellow-servant — when the servant may rely upon the assurance of the master, that he is safe from all danger.*

APPEAL from a judgment in favor of the plaintiff, entered on the verdict of a jury, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

The intestate, Thomas Daley, was employed by the defendants on a building in course of construction in Canal street in the city of New York. He was in company with three others who were engaged to carry bricks from the street to their station on the first floor, and to deposit them on an elevator used to convey them to the fourth floor of the building, where the bricklayers were engaged. The machine or elevator was situate in a cavity called the well-hole, and which was designed ultimately to contain the stairway. The elevator was operated, it would seem, by means of an old fashioned drum and rope and by horse power, and there was some claim upon the trial that it was defective, and some evidence given upon the subject. It appears from the evidence introduced by plaintiff, that the deceased went to his work as usual about seven o'clock on the morning of the accident, in company with one Conlon, Gilmartin and Feeney; that after working for about half an hour several bricks fell from above, when, as the witness Conlon states, "we sung out to them above to be careful." Some time thereafter, Conlon and another of the workmen undertook to lay two planks upon the beams over their heads, for the purpose, as Conlon stated, of securing themselves. After one of the planks had been laid, and while Conlon was endeavoring to lay a second, one of the defendants interfered and ordered the men to desist, and the plank which Conlon was endeavoring to lay was taken back. The witness further testified: "Mr. Schaaf (meaning the defendant) made us take it down; he said we did not need it, it was all secure above; he said there was no danger." Upon this the deceased and his companions continued their work, and shortly thereafter several

bricks fell from the upper story, one of which struck the deceased. There were no floors laid in the building, but the usual scaffolding or flooring was laid on the fourth floor of beams, surrounding the well-hole of an elevator which was used for hoisting hods of brick from the ground floor to the fourth floor, where they were taken by the hod-carriers at work and carried to the bricklayers. It furthermore appeared by the testimony of Conlon that at the time when the deceased was struck he was not under the place where it had been contemplated to lay the planks. It was intended to lay the planks on the side that the witness and Feeney were working upon; the decedent's duties were on the other side of the elevator, twelve or fourteen feet away, and he was standing under the scaffolding, and in the safest place, when he was struck. No explanation was attempted on plaintiff's part of how the bricks happened to fall, nor from whence they fell, except that it did clearly appear that none of the bricks fell through the well-hole or space in which the elevator was run.

The uncontradicted evidence on the part of the defendants showed that a hod-carrier, a fellow servant of the deceased, on the fourth floor, attempted to take a hod of bricks from the elevator whilst it was in motion, contrary to the express instruction of the defendants; that this caused him to stagger, and that the bricks were thereby thrown upon the flooring or scaffolding, and a portion went over the platform, one of which fell on the decedent, causing his death.

The court at General Term said: "The deceased was advised that all was secure above and that there was no danger, and continued, with the others similarly employed, to do his duty. The defendant who spoke was the employer and the boss mason, and the deceased had a right to rely upon his superior knowledge of the condition of the building and the machine and its use, and to have regarded the falling of the brick, which prompted the effort to protect himself with the others, as an accident not in any way connected with the use of the machine for the purpose for which it was employed The statement of the defendant was: 'It is secure above and there is no danger.'

"The principles enunciated in *Marsh* v. *Chickering* (25 Hun, 495), *Laning* v. *New York Central Railroad Company* (49 N. Y., 521)

and *Hawley* v. *Northern Central Railway Company* (82 N. Y., 372) are applicable and sustain the judgment entered in this case.

" The question of contributory negligence was submitted to the jury herein under a proper charge, to which no exception was taken, and these authorities establish that; under circumstances kindred to those stated forming the gravamen of the plaintiff's claim, the question of contributory negligence is one for the jury. In the cases of Hawley and Marsh (*supra*) there was a promise that the danger, which was understood by the employe, would be removed by proper repairs. In the case of Hawley the court said :

" 'While the plaintiff knew that the road was somewhat out of repair and he incurred some danger in running his engine, it does not appear conclusively that he knew how badly it was out of repair, or that the danger was imminent or very great ;' and further : 'We must assume that the officers of the defendant, who had charge of the road and must have known its condition, deemed it safe, and the plaintiff had a right to rely somewhat upon their judgment.' In that case the plaintiff was an engineer.

" This case is stronger for the plaintiff than those referred to, because there was a danger which was to be removed and which was not done, and the workman continued, nevertheless, to do the work notwithstanding the hazard incurred. And in this case, although the danger manifested itself, yet after the risk had been exposed and the men were setting about to secure themselves, the employer required them to desist, and for the reason assigned by him, as we have seen, that all was secure above and there was no danger. It does not affect the rule that the injury was received at a place other than that at which the men attempted to put the protecting planks. It is impossible to say what other protection could have been used, or what other precautions taken, had it not been for the assurance that there was no danger. And it would be very extraordinary for the courts to declare, after an assurance given to an employe by the employer like that which was given to the deceased, that he should be held unaccountable if there was in fact danger and an injury was sustained in consequence without fault on the part of the employe. If there had been no such declaration made the rule to be applied to the facts might be very different. When there is apparent danger in the calling or employment, and notwithstanding the exhibition of

it by the facts and circumstances the employer assures the employe that there is no danger, and an injury results, the most liberal rule that the employer can expect is to have the question of contributory negligence submitted to the jury, which was done in this case. They found against him, and thereby proclaimed that the deceased was not guilty of negligence in doing what he did.  *  *  *

" As already suggested, they had a right to rely upon the statement made by the defendant, and more particularly as it was given at a time when they were engaged in the effort to make themselves more secure from the danger which seemed to threaten them; and as they were thus lulled into a sense of security by the statement of the defendant already mentioned, that everything was secure above and there was no danger.  And it is to be noted here that the falling of the bricks, by which the intestate was killed, took place in about ten minutes after the declaration given by the defendant, which has been frequently referred to.  It cannot avail the defendant either that the falling of the bricks was caused by the carelessness of a fellow-servant.  They were engaged in different localities about the building, and a declaration that everything was secure above and there was no danger, would embrace not only the competency of the persons employed by whose negligence an accident might occur, but amounted in effect to a guarantee against such negligence.

" Whatever may be the rules of law governing the relations of master and servant, strictly construed with reference to the adjudged cases, none of them have gone so far as to hold the master free from responsibility where the work undertaken is apparently dangerous, but as to which he gives assurances to his workmen that there is no danger.  Under such circumstances he assumes the risk, and not the workmen.  If that is not the law, it ought to be."

For these reasons the judgment should be affirmed.

*L. C. Waehner*, for the appellants.

*George H. Hart*, for the respondent.

Opinion by Brady, P. J.; Daniels, J., concurred.

Present — Brady, P. J., and Daniels, J.

Judgment affirmed.