O’Gorman, J.
[Concurring.]—The validity of plaintiff’s claim to recover damages in this action depends on the question whether or not the defendants were guilty of negligence which caused the injuries complained of. The gist of the action is negligence, and the burden of proving the negligence of the defendants rests on the plaintiff.
At the-'close of the plaintiff’s case," a motion was made on behalf of the defendants for the dismissal of the complaint. This motion was denied. At the close of the whole case, a motion was made on behalf of the defendants that the court should instruct the jury to render a verdict *347 for the defendants. This application was granted and the jury rendered a verdict for the defense, The plaintiff’s counsel excepted and moved.for a new trial which motion was denied.
The inquiry now is whether, to use the language of the learned trial judge, on the whole case and considering the evidence in the light most favorable to the plaintiff, and giving him all the inferences which might be reasonably drawn to his advantage, a jury would be justified in rendering a verdict in his favor. The evidence thus considered showed this state of facts. The defendants, proprietors of a well-known dry-goods house on Broadway, had for many years before September, 1876, employed the plaintiff in operating their elevators. Some time in August, 1876, they had cause to be constructed and put up in their store, an elevator, for the purpose of carrying their goods from the cellar to the sidewalk, a distance of about twenty feet. This elevator was constructed and put in,its place by competent manufacturers, and was considered by witnesses for the defendants, who had sufficient acquaintance with elevators of the kind, to be remarkably strong and sufficient to carry any weight that the defendants had reason to put on it and could not be loaded sufficiently to suffer injury in carrying the goods in which the defendants dealt. Witnesses were not agreed in opinion as to the precise weight which the elevator was capable of carrying—one witness stating it as one ton, while others placed its capacity as high as five or six tons. The plaintiff was employed to operate this elevator by Mr. Denning, who was the general superintendent of the defendants, with power to employ and discharge the defendant’s servants and to assign to them their duties. The duty assigned by him to the plaintiff was to stand on the elevator car to manage and guide it and to load it in the cellar and to help to unload it on the sidewalk. He had to be on the elevator, going up and down. For eight days, the plaintiff had thus operated this elevator, without any mishap; during that time, it ran smoothly without hitch or interruption in the machinery, and nothing attracted *348 his attention or gave warning that there was any danger to be ayiprehended. On the morning of the eighth of September, 1876, at about twenty minutes to eight, the plaintiff had brought up in the car of the elevator, two loads of flannel and one case of linen, and was descending in the car, which then carried no other freight, when one of the chains sustaining the elevator broke, the elevator fell into the cellar and serious injury to the plaintiff was the result. On one occasion, before the elevator had begun to run, Mr. Denning was near the eleva tor, in company with Mr. Bond, who was the chief engineer of the defendants and had entire charge of all the machinery and elevators in their store and in speaking of this elevator to Denning, Bond said “ that chain is too light for the work of this house.” The chain was three-eighths of an inch in diameter at the time of the accident. Immediately after the accident, while the chains were still vibrating, Bond came up and was heard to say, “ That is the chain that I have been repeatedly at Mr. Denning for.being too light for its work.” Bond was not living at the time of the trial. It is in evidence that Bond then also said to Denning, who came to the scene of the accident at nearly the same time as himself : “ I knew that chain, from the first day, was not strong enough for the car. I cautioned you about it, and now you see the consequence.” Some old iron was in the cellar, which the defendants desired to sell. This, by the instructions of the defendants, was carried up in this elevator car. Bond directed the plaintiff what load was proper, and plaintiff followed his directions. The elevator never caught but once when plaintiff was taking up a large bag of waste paper, and he then lowered the elevator, changed its position and carried the paper up all right. A witness for the defense testified that he examined the elevator immediately after the time of the accident, that he saw one of the links of the chain on one corner broken, the machinery was all right and in good order; there was no flaw in the link; the iron was strong. He saw a mark where something had been jammed between the elevator and the iron beam cov *349 ered with tin. This, in the opinion of the witness, indicated such a jam of the elevator as would explain or account for the breaking of the link.
Plaintiff’s counsel offered evidence to prove that immediately after the accident, repairs were made by defendants to the elevator, and a chain was substituted stronger than that which had broken. This evidence was not admitted.
The evidence does not disclose with clearness what was the immediate cause of the breaking of this chain at the moment when it did break, and inquiry on that subject must depend on such inferences as may reasonably be derived from the evidence. On the one hand it might be inferred that the chain, if it were, as Bond said it was, too slight in the beginning, became more and more enfeebled by the wear and tear of eight days’ use, until the moment of the accident when it broke ; while on the other hand, it might perhaps be questioned whether the mark indicating the jamming of the elevator did not tend to prove some negligence in loading the elevator which might have led to the accident. But these were questions of fact, as to the conflict of evidence and the comparative weight to be attached to evidence, which properly came within the province of the jury ; and if a jury had found a verdict for the plaintiff on the evidence, a court would not have been justified in setting that verdict aside.
Recent authoritative judicial decisions have made the rules of law, as applicable to this case, comparatively clear. The master is bound to use ordinary care, vigilance and caution, in providing for his servant, machinery competent, sufficient and safe in its construction, and he is also bound to use the same degree of care in maintaining the machinery in such condition of competency and safety ; and if the master knows, or by ordinary care could have known, of any defect or insufficiency in the machinery tending to cause danger to his servant, and fails to correct the defect, or to give his servant timely warning of his danger, he is legally responsible to his servant for any disaster that may ensue.
*350 Acts which the master, as such, is bound to perform for the safety and protection of the employees, cannot be delegated so as to exonerate him from liability to a servant who is injured by the omission to perform that act or duty, or by its negligent performance, whether the nonfeasance or misfeasance is that of a subordinate or inferior agent to whom the doing of the act has been committed, or on whom it has properly devolved (Fuller v. Jewett, 80 N. Y. 52; FIike v. Boston R. R., 53 Id. 549; Malone v. Hathaway, 64 ld. 5; Hough v. Texas R. R., 100 U. S. [10 Otto] 217). The servant is justified in presuming that these duties on the part of the master have been duly performed, and failure of the master to perform these duties is not one of the-ordinary risks of the business which the servant is by law presumed to accept. On the other hand, if the servant had as good means to.detect the existence of a dangerous defect or insufficiency in the machine, as the master had ; if the defect was obvious, or could by ordinary care have been discerned, and if the servant continue in the employment without objection or remonstrance, then the servant is presumed to have accepted the extraordinary risk and is himself responsible for the consequence (Laning v. R. R., 49 N. Y. 532-534). The servant is not chargeable with knowledge of latent defects, but only with knowledge of such as are obvious (De Forrest v. Jewett, 88 N. Y. 264, 268).
There is no evidence in the case at bar that the insufficiency of the chain was obvious, but knowledge of its insufficiency for the work of the house was communicated by Bond, the chief engineer, to Denning, the defendants’ superintendent ; and for the purposes of this contention, Bond’s knowledge must be held to be the knowledge of the defendants (B ickner v. R. R., 2 Lans. 506; aff’g 49 N. Y. 672; Laning v. R. R., 49 N. Y. 521). And the negligence of these agents of the defendants to act upon their knowledge for the protection of the plaintiff, must be regarded as the negligence of the defendants (Laning v. R. R., 49 N. Y. 532-3; Fuller v. Jewett, 80 ld. 46; Hough v. Texas R. R., 100 U. S. 217).
*351 The question whether plaintiff could himself by ordinary care have detected the insufficiency of the chain and also whether his own negligence to use such care contributed to the account were questions of fact within the province of the jury to consider (Payne v. R. R., 83 N. Y. 574).
The following decisions of the court of appeals have been cited as bearing on this case: In De Graffe v. N. Y. Central R. R. (76 N. Y. 128-9), it was proved that a brake chain was made of the best material and would bear a strain of six times the amount of the power applied. The court of appeals held that from that evidence and the fact that the chain did break, although the evidence was far from conclusive, yet the case was rightly submitted to the jury and the jury was justified in concluding that there was some weakness or defect in the chain. A more recent decision, Dillon v. R. R. (48 Super. Ct. 283), seems to adopt the same principle. There it was held that the mere fact of the falling of a floor loaded with oats was evidence to go to the jury of a defect in its construction (see also Mullen v. St. John, 57 N. Y. 567).
In the case at bar, the jury would have had for their consideration, if the case had been submitted to them, the additional fact, that the chief engineer of the defendants had communicated to them his opinion that the chain was too slight for the work of the house and in what he said immediately after the accident, attributed the accident to that cause.
The judgment is reversed and a new trial ordered, with costs to the appellant to abide the event.