HOFFNAGLE v. THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, appellant.

*Negligence — liability of master to servant for.*

One L. entered into a contract with defendant to build a brick arch one hundred and fifty feet long, by the terms of which defendant was to furnish materials, centers, etc. The centers were frames of wood, four feet high and fifteen feet long, used to support the arch while building and until the mortar had set. Defendant furnished four centers. The brick work was built upon them and then they were moved on for use elsewhere. Plaintiff's intestate was in the employ of defendants, and, under the direction of its head carpenter, was engaged in removing one of the centers over which the brick work had been built, partially on that day, when the bricks fell upon him and killed him. There was evidence tending to show that it fell because the mortar was not sufficiently set. A similar arch had been built before with these centers, but that was of new brick, while 'the brick furnished in this case of defendant were partly old brick, upon which the mortar requires longer to set. The center was being taken out because it was wanted elsewhere. The day before, L. had applied to defendant for more centers, but they had · t been furnished, though they were afterward.

*Held*, that there was evidence of defendant's negligence to go to the jury.

THIS was an action to recover damages for the death of the intestate, alleged to have been caused by the negligence of the defendant. There was a recovery at the circuit by the plaintiff. Exceptions were taken which were directed to be heard in the first instance by the general term. The defendant moved for a new trial on the judge's minutes; the motion was denied, and an appeal was taken upon the case and upon the order denying new trial, to this court.

The defendant had entered into a contract with one William K. Lighthall, a mason, for building certain sewers at West Albany, with brick arches, upon stone-wall foundations. The contract was made by accepting Lighthall's proposition, made in the following words:

" I will undertake to do the work of building arch culvert under Sand Creek road at West Albany where located, 18 May, 1872, for the following prices, company to furnish all material, centers, etc.: Stone work for $3.50 per cubic yard; old brick for $7.75 per M.; new brick for $6.75 per M."

The sewer to be constructed was about one hundred and fifty feet long. " Centers " are frames of wood, designed to hold up the arch until it is finished and the cement is set; those required for this work would be four feet high, and fifteen feet long. The defendant had four of these centers which had been used by it on a former occasion, each fifteen feet long. They were constructed in the form of frames, each consisting of four ribs, in a semi-circular form, upon which narrow strips of boards, called ribbons, were placed as a covering, and which supported the brick, the foot of the ribs resting upon the stone wall. At the time of the accident which occasioned the death of the plaintiff's intestate, the defendant had furnished four " centers," old ones, and the arch had been con-. stucted over these four centers. No new or additional centers had been provided, and on the morning of the 27th June, 1872, the center first built upon had been removed and placed further forward for further use. In the afternoon of the same day, between three and four o'clock, while the carpenters, employees of the defendant, were removing the next center, for the purpose of placing that forward also for further use, the brick arch fell and killed the intestate.

It appeared in evidence that a considerable portion of the brick of the arch that fell — nearly or about a third or quarter of them — had been laid in the forenoon of the same day the arch fell; that the bricks used were of mixed sizes, and a large proportion of them

were old brick ; it was also in evidence that it takes one or two days longer for cement or mortar to set upon old brick than upon new; and also that when an arch is made of brick of unequal sizes, that the spaces filled with mortar are larger. It was also in evidence that on the day before the accident the contractor, Lighthall, asked the defendant's boss carpenter, Fripp, to furnish more centers, and Fripp replied that they carried on the work before with that kind of centers, and he did not furnish any others. In the afternoon of the 27th, Fripp sent four of his men, including plaintiff's intestate, to remove the center, the removal of which was the cause of the accident. Fripp testified that Lighthall, the contractor, directed the removal of the centers, and that he (Fripp) did not determine the time when they should be removed. He also testified that it was the business of carpenters to put up centers, and they were sometimes removed by them, but the masons generally say when centers should be struck, and generally strike them themselves. On the former occasion, when the work proceeded with only these four centers, the brick used were new. The persons who were sent to remove the centers were the employees of the defendant; were paid by it and were directed to their duty by the defendant's boss carpenter. Lighthall gave notice to Tripp that he needed more centers, further on. All other material facts appear in the opinion.

*A. J. Parker,* for plaintiff.

*M. Hale,* for defendants.

P. POTTER, J. The construction of the terms of the agreement between Lighthall and the defendant, I think, is a material question to be considered in this case. Among the things that the defendant agreed to do, on its part, by accepting Lighthall's proposition, was " to furnish centers." As the agreement is silent as to the time when, and how many centers, were to be furnished, I think the law will imply that it was in contemplation of the parties, that the defendant should furnish as many as the progress of the work reasonably required. It could not reasonably have been intended by the parties to this contract that in conducting the work the centers that were being used, or those that should be required to sustain the arch until the cement became set so as to sustain itself, should be struck and removed forward, without reference to the hazard of doing so; nor can it be implied, I think, that the contractor was to

keep his employees in waiting for the defendant to furnish centers; and I find no evidence that the contractor had knowledge, at the time of making his contract, that the defendant had on hand a limited number of old centers, or that any portion of centers that should be used should be struck and moved forward for other and further use. It would still seem to be reasonable, if it was the custom or duty of the mason to strike centers, to imply an intent between them that when the arch had become so set and strong as to justify its removal, that the defendant might call upon the mason to strike it. This I think may be regarded as reasonably in the contemplation of the parties at the time of making the contract.

It seems to have been conceded upon the argument that the falling of the arch was owing either to the mortar not having set, to its being too green, or because of the unskillful manner of the removal of the center. Whether it was the one or the other of these causes, was, of course, a question for the jury; it was a question of negligence, and it might have been submitted to the jury specifically as to which cause produced the accident. It was not so submitted; there was no request so to submit, and no exception taken in regard to it. Indeed the weight of evidence is, that the falling of the arch was because of the center being prematurely removed. We may assume this after verdict. At all events, we may assume negligence.

The important question is, first, whose negligence caused the injury? The facts in relation to this were all before the jury. I think the learned judge correctly charged the jury upon this point, and to the extent as follows: "If you believe the death occurred through Mr. Lighthall's negligence, then the defendants are not liable." No exception is taken to this portion of the charge, nor to submitting the question of Lighthall's negligence to the jury. It is, therefore, the law of this case. So, too, the learned judge charged, as requested by the defendant's counsel, "that if the accident and the death of the plaintiff's intestate occurred from Vanderzee's negligence in prying with the crowbar, that was the negligence of a fellow servant of the deceased, and plaintiff cannot recover." This is not only sound law, but it was the submission by the defendant of the negligence of that fellow servant to the jury, and their finding is conclusive. The judge also charged, at the request of the defendant's counsel, "that if Lighthall was a servant of the company, the plaintiff cannot recover for the death of her intestate, if caused by Lighthall's negligence." Though I think, as

a question of law, that Lighthall, by his contract, was not the servant of the defendant, yet the defendant cannot object to this as the charge was made as requested, and it must be assumed, after verdict, that Lighthall was not the servant of the defendant in a sense to make the defendant liable for his negligence.

The simple and single question remains, were the defendants guilty of such negligence as creates a liability to an employee ?

The removal of the centers at the time, and in the unset condition of the mortar or cement, is, beyond question, the cause of the accident; and it logically follows that its removal was negligence, or want of reasonable care. It was removed by the defendant's employees, by direction of the foreman of defendant, to whom was intrusted the executive duty and charge of that department of its business. Neither by the terms of the contract, nor by the finding of the jury, can we now hold that the removal of these centers was a part of the duty of the mason contractor. By the express terms of the contract the defendant was to furnish centers, and, by fair implication, it was to furnish them as fast as the reasonable demands of the mason work required them. There was nothing in the contract about using old or existing centers, or as to limiting the contractor to any number of centers. The absence of centers to meet the demands of the contractor was the default of the defendant. There was no warranty or statement by the contractor that it was safe to remove the center in question. He took no responsibility. All he desired was centers to work by. It was the duty of the defendant to furnish them. The risk of prematurely removing this center was the defendant's risk. It preferred the taking of that hazard to the expense or time of making a new one. Even the opinion of the contractor of safety, had one been given, would not have been a justification of the act, if negligent.

If we are right in this view the only question that remains is this: The act performed being by the direction of a fellow servant, was the risk by which the plaintiff's intestate lost his life one which, in law, he assumed when he entered into the defendant's employment ? What is the implied contract between master and servant in this regard ? The rule was held in this department, in the cases of *Brickner* v. *The N. Y. C. & H. R. R. Co.*, reported in 2 Lans. 506, and in the case of *Laning* v. *The Same*, decided at the same term, subsequently reviewed in the court of appeals, and reported in 49 N. Y. 521, etc., where, at pages 532 and 533, the rule or *duty*

is much better expressed, as follows: " *That* duty or contract is to the result, that the servant shall be under no risks from imperfect or inadequate machinery, *or other material means or appliances,* or from unskillful or incompetent fellow servants of any grade. And there is not a performance of it until there has been placed, for the servant's use, perfect and adequate physical means, and for his help-meets fit and competent fellow servants, or due care used to that end. That some general agent, clothed with the power and charged with the duty to make performance for the master, has not done his duty at all, or has not done it well, neither shows a performance by the master, nor excuses the master's non-performance." "It is for the master to do, by himself, or by some other. When it is done, and not until then, his duty is met or his contract kept." This extract, in its spirit, I think, covers the case at bar, and controls our action. It contains an elaborate review of the cases, and is a fair epitome of the most modern rule of liability between master and servant in this class of cases. The cases cited in this opinion need not be repeated here, nor need we look beyond that case for a different rule if the case at bar comes within it, as I think it does. The plaintiff's intestate was directed, by an authority he felt bound to obey, to do an act that the exercise of a discreet and reasonable judgment would have pronounced dangerous in the extreme. It seems to me to have been the extreme of gross, not to say reckless, negligence; and for which, within the rule above, the defendants are liable. I think the plaintiff should have judgment upon the verdict with costs, and that the order of the special term should be affirmed with costs.

MILLER, P. J., and PARKER, J., concurred.

*Judgment on the verdict with costs.*